# NASHVILLE, CHATTANOOGA & ST. LOUIS RAILROAD COMPANY *v.* SEABORN.

## (*Nashville.* February 9th, 1887.)

1. RAILROADS. *Collision. Statutory precautions. Misleading charge.*

   Where a wagon and railroad train collide, and thereby a person riding on the wagon is killed, if it appear that the wagon was driven against the engine of the train as it passed, and was not on the track in front of it, the statute prescribing certain precautions for prevention of accidents when "any person, animal, or other obstruction appears on the track" has no application; and it is erroneous and misleading for the Court to give it in charge, in an action for damages against the railroad company, for such killing.

   Code cited: ᴪ 1298 (M. & V.); ᴪ 1166 (T. & S.)

2. SAME. *Negligence. Erroneous charge.*

   Where in an action for damages against a railroad company for personal injuries, causing death, there is proof tending to show negligence on the part of both the desceased and the railroad company, but *no evidence* that the act causing the death was *willful,* it is error for the Court to charge in effect that the plaintiff, if repelled on account of the deceased's contributory negligence, can, nevertheless, recover, if the act causing the death was *willfully* done. Such charge is not called for by the facts, and is misleading.

3. CHARGE OF COURT. *Judge stating positions insisted on by the parties.*

   It is not incumbent on the Circuit Judge to state in his charge the positions insisted on by the parties; but if he undertakes to do so, he must not so state them as to mislead the jury, in a material matter, to the prejudice of either party.

---

### FROM FRANKLIN.

---

Appeal in error from Circuit Court of Franklin County. J. J. WILLIAMS, J.

A. S. COLYAR, MARKS & CHILDRESS, STEGER & WASHINGTON, for Railroad Company.

J. H. HOLMAN and T. D. GREGORY for Seaborn.

SNODGRASS, J.   This action for damages for the negligent killing of Isaac R. Seaborn was brought by his widow for use of herself and children against the Nashville, Chattanooga & St. Louis Railroad Company.   Seaborn was killed by a train on the road of plaintiff in error on the 22d November, 1879, at the crossing of said road and the Stewart's Ferry Turnpike, in Davidson County.

At the time of the accident Seaborn, with three others, was in a wagon returning from Nashville on said pike.   The other occupants were two men and a boy, the latter driving.

About 4:30 P. M. of the day mentioned they arrived at the crossing.   It was a clear evening, but no one of the party appears to have seen or heard the train until the moment of the collision.   They had approached the crossing in a walk, without thinking of or noticing for the train.   Just as they reached the crossing, and before the mules they were driving had stepped upon the track, Seaborn said, "Look out, Lewis!" speaking to the driver.   The other two occupants of the wagon, whose backs were turned in the direction from which the train came (Seaborn's face having been in that direction), looked around and saw the cowcatcher of the train in front of the mules.   The

mules drew back. The end of the tongue struck and caught in the engine, the wagon was drawn alongside of it, and Seaborn killed, being found, after the train had passed, in the stock-gap mortally injured, of which injuries he died that night.

The three survivors of the accident testified that no whistle was sounded or bell rung on the engine as it approached, and that they did not see or hear the train until near the moment of the collision.

On the other hand, the engineer, fireman, front brakeman, and conductor testify that the whistle was sounded and the bell rung for the crossing, the bell one fourth of a mile and the whistle a hundred yards before reaching it; that the danger signal was given and the engine reversed as soon as the danger appeared, forty or fifty feet from the crossing. Other witnesses, passengers on the train, testify to the same effect.

These are the substantial facts, as reported by the Commission of Referees, to which there is no exception on either side. Plaintiff in error excepts to some omissions and erroneous conclusions, but no question is well made upon the correctness of the facts detailed, and they are the facts of the record upon which this Court therefore acts.

The Commission further reports, and the fact is, that all the persons in the wagon were well acquainted with the road and the crossing, and it is further reported that there were many other facts and circumstances tending to show gross negligence

on the part of the plaintiff in error, and gross contributory negligence on the part of the deceased.

To this part of the report plaintiff in error alone excepts, and by some specific exceptions brings out other parts of the record for consideration; but in the view we have taken of the case this need not be noticed, as the part referred to as reported is sufficient to determine the error of the judgment.

There was a verdict for plaintiff of $10,000, and judgment accordingly. Motion for a new trial being overruled, defendant appealed in error.

To the report of the Commission of Referees, which was in favor of affirmance, many exceptions besides those already noticed are taken, addressed to errors in the charge of the Court and to excessiveness of the verdict.

The errors principally complained of in the charge are those resulting from the attempted application of the statute requiring the observance of certain duties on the part of railroad companies to prevent accidents, as set forth in § 1298 of the new Code. After explanation of the pleadings, and charging in reference to the statute of limitations, not now material to be quoted, the Court said:

" The laws of Tennessee have prescribed certain rules to be observed by railroad agents in the running of trains, which, if observed, protects the road against damages for injuries occurring on the road. On the other hand, if the agents fail to comply with the requirements of the statute, and

to use all reasonable means in their power to prevent accidents, the road will be held responsible for such damages as may occur from the wrongful acts of its agents."

Then follows a quotation of the four sub-sections of the section referred to, with two following sections, making the company liable when these precautions are neglected, and excusing it from liability when they are observed. To this the Court adds:

"If you find from the proof that the agents of the company were in the performance of the duties required of them by law, your verdict should be for the defendant. But if the agents of the defendant were neglecting any of the duties required of them by sub-section 4, § 1298 (of the new Code) at the time of the accident, your verdict should be for the plaintiff," etc.

Further on the Court instructs the jury that "it is conceded on both sides that the crossing where the accident occurred was at a turnpike, and not at a public or county road, and that there was no sign up, 'Look out for the cars!' etc. If you find the facts as conceded,    *    *    the statute requiring the whistle or bell to be sounded one-fourth of a mile before reaching the crossing, and continuing it at short intervals to the crossing, would have no application to this case, and would leave the parties to their common law rights, so far as regards the ringing the bell and sounding the whistle."

"At such crossings," he adds, "each must respect the rights of the other, and use due caution to prevent accidents to persons traveling upon the other, and also to avoid accidents to themselves as passengers over the track. When a railroad company or its agents are running a train in violation of the statutory provisions, as set forth in § 1298, sub-section 4, and an accident occurs to another during said period, the injured party is entitled to recover, although guilty of negligence at the time which may have greatly contributed to the accident. Such negligence is proper, and should be looked to in mitigation of damages, but not as an answer to the action.

"But a different rule prevails where the road or its agents are not running in violation of some one .or more of said statutory requirements. In such case, if the accident was the result of the plaintiff's negligence, he cannot recover; for if the accident was caused by the gross negligence of the plaintiff, he is considered the author of his own misfortune. If a party is guilty of some negligence, and is injured by the wrongful act of another, such negligence will not prevent a recovery unless the damage could have been avoided by ordinary prudence; but if the party could with ordinary prudence have prevented the accident, but did not use that prudence, and his want of care and his negligence caused the damages, the plaintiff should not recover unless the act was *willfully done* on the part of defendant."

There are several objections made to this charge which are well taken. The first, that the statute should not have been given in charge at all, as it had nothing to do as a whole with the case, is proper to be first disposed of.

There was no part of this statute, except that providing for keeping the "engineer, firemen, or some other person upon the locomotive always upon the lookout ahead," which had any application to the case, and its use, and the attempt to apply Section 4 from it is done in a manner well calculated to mislead the jury. The *whole* of Section 4 applied by the Court was not applicable, as it clearly appears that these animals and wagon tongue struck had not appeared upon the track until the very instant the tongue caught in the engine, and hence no question about an appearance upon the track, and the observance or non-observance of statutory precautions, when such appearance is made, should have been allowed to enter into the consideration of the jury.

If any negligence existed, it was not the non-observance of these statutory duties, but the non-observance of the common law obligations of the company to have the lookout watch for, and all hands prevent, the occurrence of any accidents about to happen from some other cause than an object already on the track. The jury should have been told nothing about the statute further than is suggested, or further than to be told that it had no application.

There was, besides, positive error in the instruction against allowing a recovery in plaintiff's favor "unless the act was willfully done on the part of defendant."

This left the jury to conclude that upon the facts proven they would have the right to find that the act was willfully done, when nothing in the record would justify the conclusion, and nothing in it called for the charge.

The charge is also objectionable in stating the positions insisted upon by plaintiff, and the denials of defendant, in this, that the positions of plaintiff are enumerated, and it is then added, "the *most* of these propositions are denied by the defendant;" and then to several of them counter positions of defendant are stated, in which defendant is limited to a special denial, among other things, of the rapid speed rate urged by plaintiff as negligence, to about twelve miles an hour.

This charge left the jury to infer that the Court did not understand all of plaintiff's positions or claims for recovery to be denied, and that defendant, instead of being allowed to controvert plaintiff's position, "that the train was running at a too rapid rate of speed," by *any* denial, was limited to an issue of about twelve miles an hour, tendered in this proposition.

It was not incumbent on the Circuit Judge to repeat the positions of parties, but if he sees fit to do it, in the vital form attempted, he must not so state them as to leave the jury to suppose

the case conceded away, unless that concession appears otherwise in the record.

No other objection to the charge need be noticed. It is obvious that it, or something else, misled the jury, as indicated by the amount of the verdict. There is nothing in this case justifying the amount given. The deceased was grossly negligent, and whatever may have been the negligence of the defendant, a proper consideration of the contributory negligence of the deceased should have caused a different verdict.

The report of the Commission is disapproved, judgment reversed, and case remanded. Defendant in error will pay cost of appeal.