## TOWLES v. SOUTHERN R. CO.

(Circuit Court, W. D. Tennessee.   July 14, 1900.)

1. RAILROADS—OPERATION OF TRAINS—STATUTE REQUIRING LOOKOUT—LIABILITY FOR ACCIDENT—LIMITATION ON OPERATION OF STATUTE.

Mill. & V. Code Tenn. §§ 1298–1300, requiring railroad companies to keep the engineer, fireman, or some other person upon the lookout ahead, and, when any person appears upon its road, to sound the alarm whistle, put on the brakes, and employ every possible means to stop the train, and providing that every railroad company that fails to observe these precautions shall be responsible for all damages resulting from any accident, are not applicable to the operation of trains where, because of the locality or existing conditions, compliance with the statute is impossible, as where engines or cars are going through the process of switching, and cars are necessarily being pushed, instead of being pulled, by the engine.

2. SAME.

The emancipation of railroad companies from the operation of the above statute is not confined to any locality known as "yards" or "depot grounds," but extends as well to adjacent grounds, and to any place where the company must inevitably engage in movements and maneuvers that practically force it to move trains or cuts of cars by pushing, instead of pulling, with the engine, as contemplated by the statute.

3. SAME—COMMON-LAW OBLIGATION—NEGLIGENCE—PERSONAL INJURY.

Although a railroad company be relieved from the liability imposed by Mill. & V. Code Tenn. §§ 1298, 1299, for a personal injury caused by its failure to maintain a lookout, because of the impossibility of doing so under the conditions in which its train was being operated at the time of the accident, it may still be liable, because of the breach of its common-law obligation to the party injured in negligently managing its train after it knew that deceased was on its track, and in a place of danger.

Motion to Direct Verdict.

F. P. Poston, for the motion.
W. W. Goodwin, opposed.

HAMMOND, J.   The motion of the defendant company to direct a verdict in its favor is granted as to the first count in the declaration, but is denied as to the second.   The first count is upon the statute, and is predicated of a disobedience of its regulations for running railroad trains, negligence being charged in respect of that on the occasion of killing Towles.   Mill. & V. Code Tenn. §§ 1298–1300.   The second count, however, is apart from the statute, and charges negligence in respect of the common-law obligation of the defendant company towards Towles on that occasion.   As to the second count, it seems to me quite plain that there is a question for the jury, notwithstanding the contributory negligence of Towles, in this: that it is for them to say whether the train hands of the defendant company were negligent in managing the train after they knew of Towles' presence on the track in a place of danger.   Coasting Co. v. Tolson, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270; Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485.   That question will be hereafter submitted to the jury under proper instructions.   For the present the court will give its reasons for directing the verdict in favor of the defendant company on the count based on the statute.

I have sought, since the court adjourned, to examine every case in the supreme court of Tennessee dealing with the subject of exceptions to the statute, established by judicial construction, so far as they relate to the locality of the injury, the character of work being done by the train at the time, and the peculiarities of its movements. None of them is a precedent for this case, and, if the language of the opinions is to be strictly limited to the facts of the case in hand, the most that can be said of them is that they are full of obiter dicta that may cover this case. But by adjudication and opinion they abundantly establish a principle of judicial construction in favor of emancipation from the absolutism of the statute that governs this case and justifies this . judgment. Tersely stated, it is that the statute does not apply whenever obedience is impossible, although it may be that a collision has occurred, and some one or some thing has been injured, by the negligence of the company. The inculpatory negligence must be found elsewhere, if at all, than in an obvious disregard of the statute, if that disregard has been inevitably imposed on the company by the circumstances of the case,—which is the case here. Contributory negligence being usually an adequate defense elsewhere than under the statute, there is always a struggle to drive a given case under the statute, however incongruous the facts may be in that situation; while, on the other hand, the statute is so absolute, and the railroad company is so helpless under it, that there is a struggle oftentimes to bring the case from under the statute, and within the sheltering cover of contributory negligence, that becomes quite as incongruous in situation as the other. Plain, practical consideration of mutual relief against any inelasticity of construction will save the statute from any absurdities of situation. One has only to read the statute to see that as to that subsection involved in this case, which relates to obstructions of persons or animals appearing on the track within view of a running train, it was never designed to apply to a train with the cars in front of the engine, nor to engines or cars engaged in or going through the process of "switching," while, at least, they were going backwards. And for the very simple reason that the engineer and fireman cannot be "always upon the lookout ahead" in such a situation. Of course, the courts would not allow a traveling train to escape the regulation of the statute by assuming through choice this situation, and running all their trains backwards, or with the engine behind the cars, where no lookout could be kept ahead; and we find them in such a case holding that that very formation of the train is a violation of the statute, and the liability for any injury done becomes, indeed, absolute. Railway Co. v. Wilson, 90 Tenn. 271, 16 S. W. 613. It is conceded by the learned counsel for the defendant company that this is so as to "a regular" train on the "main track" and in a street of a town. We need not stop here to inquire as to the suggestiveness of these limitations as the rule of judgment in that case. It was in the street of a town, but it does not appear whether it was a "regular train," nor whether it was the "main track." Nor was that, in my opinion, the rule of judgment. The engine was pushing a train of nine cars "into the company's yard." It might have been a mere "cut" of cars, and not "a train," which is a word loosely used; may not have

been "a regular train," and may not have been on a "main track"; and other decisions show that the fact of its being a street was a mere incident, and not a condition, of the situation, since the absolute liability for running "a train" in that fashion applies as well to the yards of the company as to the main line and streets. The reason of the decision was that it was possible for the company to have obeyed the statute by running the engine in front, head on, with the engineer and fireman in the normal condition of being lookouts ahead, and ready to save life or property by complying with the regulations of the statute for that purpose. It was running the other way for the mere "convenience" of the company, as the court held. I can imagine the most regular train—say a "Limited" or a "Cannon Ball"—put in a situation on the main track many miles from any yard or depot grounds or side track, or running through the yards or depot grounds and on a "side track," for that matter, and yet not within the statute, and necessarily without it. Imagine a wreck, or the collapse of a bridge, night or day, and the compulsion of the management to run the train backwards with the locomotive behind the cars, and itself running backwards. That is not the condition of the statute. Practically, compliance with its regulations is impossible. Temporarily, at least, the statutory plan is dislocated, and inevitably the statute temporarily must be abandoned. The company and its train management are not without responsibility in the premises; but it is responsibility to the common law, and not the statute, it would seem, to all reasonable consideration. They would be required to do what a reasonably prudent railroad management should do under that dislocated condition, and not what the statute peremptorily commands under an entirely different condition, as shown by its own words of description. Hence I do not think the question always depends on mere locality, if ever it does, but on conditions, some of which may, under given circumstances, be confined by locality or be dominated by that condition of itself.

A struggle has been made here to establish the place where the accident happened as within the "yard" of the defendant company, in order to bring it within the decisions holding that the statute does not apply to switching operations within the company's yards. The court quite agrees with the learned counsel of the plaintiff that this position is wholly untenable. These cases refer to what appears in the facts of this case, and is called the "inner yard," but not to the stretch of tracks beyond, called the "outside yard." Superintendent Pegram's testimony shows that railroad companies mark and call their "yard limits" a stretch of tracks leading out as far as necessary, sometimes for 10 or 12 miles, as in Chicago, and in this case for 2½ miles from the Madison street "inner yard," and a mile and a half from the scene of this accident. He explains that, to avoid so many train dispatchers, and constantly changing train orders, these limits represent what we may call the territory of the switch and other engines engaged in and about the terminal or like station business in the movements of the cars and trains not strictly "on the road." Within these limits the engines, whether switch engines or others, move at will, according to the exigencies of the business, but under orders to watch for incoming or outgoing "trains" for the road, and to side track when they appear.

These road trains coming or going when they get to these limits lose their freedom of the right of way, and must move under control, and avoid collisions with the others,—each avoiding interference with the other under the special rules for that situation,—something like the rules of harbor navigation, as distinguished from open sea navigation, if we may use that illustration. These are not the "station yards," "depot grounds," "switching yards," where trains are made up, etc., as shown in the Tennessee decisions relied upon by the defendant company. It would be intolerable to allow a company to thus at will exempt itself by marking long stretches of its tracks "yards," and would virtually abrogate the statute in the cities and towns. But the principle of emancipation from the absolutism of this statute, as construed by the courts, is not confined to any locality known as "yards," "station grounds," or "depot grounds," and the defendant company need not thus resort to expansion of yard limits from "inner" to "outer" yards. It applies as well to adjacent grounds, and, as has been suggested, to any place where the company must inevitably engage in movements and maneuvers that practically force it to move trains or cuts of cars by pushing, instead of pulling with the engine in front, as contemplated by the statute. Then the statute is suspended, so to speak, for that occasion, and the case reverts to the common-law protection. The decisions themselves show this, and, as before said, it is not a matter of locality so much as of conditions presented in the particular business in hand.

The first of the cases is believed to be that of Railroad Co. v. Robertson (1872) 9 Heisk. 276, happening here in Memphis, in the premises with which most of you are no doubt familiar, at the yards and depot grounds of the Louisville & Nashville Company. It was the case of an employé killed by an engine backing out tender foremost as he was stepping from one track to another while checking a freight train just arrived in the yard. The court says that "the statute in terms makes no exceptions, but it seems to us unreasonable and impracticable to apply it strictly to the running of engines and cars about the depot grounds or yards, and in relation to the hands who are moving across the track in the discharge of their duty." Here impracticability is the rule of judgment, as it is in every subsequent case, and there is a constantly growing extension of the rule from this first case to the last.

The case of Railroad Co. v. Connor (1872) 2 Baxt. 382, was at Nashville, while an engine was backing from the depot, on one side of the city and river, to the roundhouse, on the other side of the city and river. It killed a stranger. The court sitting in Nashville would not take judicial notice of situations, and, the record not showing the facts, would not consider whether the case came within the Robertson Case, supra.

In the case of Haley v. Railroad Co. (1874) 7 Baxt. 239, at Humbolt, the engine was pushing the cars around the switch or "horn," with a lookout on the foremost car, but there was no bell rope, and he had no signal connection with the engineer. The man killed was an employé off duty. He was warned off by the lookout, but did not get out of the way, except to step off against the edge of a platform, where he

thought he was safe, and would have been with ordinary cars, but the sleeping cars, being wider, caught and killed him. The jury gave a nominal verdict of five dollars, which was sustained. It was held the statute did not apply, on the authority of the Robertson Case, supra. But it was not the locality so much as the fact that the necessary railroad operation made it impracticable to run the engine in front in the usual way provided for by the statute. The locality is given prominence in the opinion certainly, but it is plain that it is only mentioned thus because this condition requiring the trains to run apart from the statute is the natural result of switching trains around a horn or switch. There is no special grace in the spot, but only the development there of an especial habitude of action by the train hands in moving the cars; a situation that may occur elsewhere as well as on that spot.

The case of Railroad Co. v. Rush (1885) 15 Lea, 145, 150, is illustrative only, though sometimes cited in this class of cases. A brakeman was sent out to flag a train, instead of which he went to sleep on the track, and was injured by the train he should have flagged. It was held that the statute did not apply, thus establishing another exception judicially ingrafted on the statute. The opinion is instructive for its enumeration of such exceptions as shown by the cases that declare that it was not the intention of the legislature "to extend its provisions to every case which might be embraced in its general language."

There is a previous case of Cox v. Railroad Co. (1875), not reported in the regular reports, but found in 2 Leg. Rep. 168, and now 1 Tenn. Cas. 475, where the plaintiff's intestate was killed at night "in the company's depot yard at Paris." There was "a train," consisting of an engine and tender, moving at the rate of six or eight miles an hour, backward and forward alternately, pumping water. He was killed by a backward movement while using the track as a footpath. He was a stranger and a trespasser killed by his own negligence. The engineer was doing everything possible to watch the track and give warning to any he could not see. Held, that the statute did not apply, and that the company was not liable at common law. Here again there was a condition, and a very peculiar one, requiring the engine, or "train," as it is called, to move backward. That condition arose in a depot yard, but it might have arisen at any water tank on the line anywhere just as well; and, in my opinion, the statute would have been just as inapplicable in one place as the other. The opinion is an able one, and gives the reason of the ruling in such language that it furnishes a principle for judicious application elsewhere than in a depot yard. Cox v. Railroad Co., 2 Leg. Rep. 168, 1 Tenn. Cas. 475.

The case of Patton v. Railroad Co. (1890) 89 Tenn. 370, 15 S. W. 919, 12 L. R. A. 184, is a very important case in this series. There is no yard, or depot grounds, or side track, or other locality that is confusing. It is out in the open, and on the main line, where one Tipton was killed by detached cars following a regular traveling train from which these cars were broken loose. He was walking on the track, and, stepping aside, let the engine and its attached cars pass. He did not

observe the following of the detached cars, and resumed his walking on the track, and was killed by their noiselessly running him down. There were train hands on the detachment of cars, but there was upon them no "lookout ahead," and no effort to put down the brakes, although the intestate could have been seen by such a lookout. But because there was no engine in the front the statute was held not to apply for the simple reason that the company was not, under the peculiar circumstances of the situation, required to have an engine in front, in order to obey the statute. There was in the case no element of locality to dominate the excusable condition which emancipated the company from the burden of the statute; and we have the principle set out in the beginning of this opinion as the result of all the cases denuded here of all possible misunderstanding. I shall not take the space to quote the language, but the opinion is not obscured by any reaching out for a class of localities within which to justify the ruling, but places the case within a category which comprehends any locality where the peculiar condition arises; or rather it describes a predicament, awkward enough in some cases (as in that under observation) and habitual in others (as in that we are now deciding), where the statute does not apply, or, it may be better to say, for which the legislature has never undertaken to provide,—that predicament, namely, where the company must move its cars, or let them move themselves, without a locomotive ahead, with vigilant lookouts always on duty. As this case says, "The principles of the common law govern in cases not within the purview of the statute." Read in the light of this opinion in the Patton Case, those which seemingly depend so much on localities become harmonious in principle, whatever variations there be in the descriptive character of those localities.

The next case—Railroad Co. v. Wilson (1891) 90 Tenn. 271, 16 S. W. 613—has already been considered. It may be added that it is one applying the statute as governing the rights of the parties, and is the one case most urgently relied upon by the learned counsel of the plaintiff in this case. Fortunately, as will be seen presently, the supreme court itself, without overruling it, has undertaken to harmonize it with the other cases we are now citing for our judgment here, by explaining the meagerness of the proof as to kind of operation going with the train at that locality. Robert Acuff, a deaf mute, walking on the main track, was killed by a construction train moving backwards without any unavoidable excuse for not having the engine in front as the statute requires; and the statute was held to apply as in the Wilson Case, supra; Railroad Co. v. Acuff (1892) 92 Tenn. 26, 20 S. W. 348. Taylor v. Railroad Co. (1893) 93 Tenn. 305, 27 S. W. 663, was a case of an employé in the yard at Columbia, injured by a backing switch engine, and was within the ruling of the first case,—that of Robertson, supra,—establishing that the statute did not contemplate legislative regulation for those complicated, irregular, and variable movements of engines and cars going on within the companies' station yards with which the public had no concern, and where only employés were engaged. It illustrates the character of cases where the locality is of itself an indication of the kind of movements and dangers with which the statute does not concern itself. There is no

ambiguity of classification in such places, and no necessity for distinctive predicaments.

We next come to a case that has been much relied on in argument, but which really describes a situation quite apart from any we have here, and comes squarely within the locality cases, if they may be called so, like the one last cited. It was at the depot platform, on a side track, that the injury was done by detached cars making a "running switch." The circuit judge misapplied the Wilson Case, supra, and the supreme court distinguishes the two. It may be said, in justification of the circuit judge, that the supreme court had not then begun to distinguish and explain the Wilson Case, and restrict its broad language, as has been done in subsequent cases. Railroad Co. v. Pugh (1895) 95 Tenn. 419, 32 S. W. 311.

The next case in chronological order is useful to our investigation by a kind of reverse application. It was a cow case. But it is none the less important. The cow was killed by a through freight train in the yards, and within a few feet of the depot building. The engine was in front, and the train rushing through the depot yard without intention of stopping, and without the least regard for the statutory observances. The train was on "a regular trip"; was not engaged in switching, though passing through the yards. Here we have a distinct illustration that being in the yard is not the single element of the rule of judgment; nor is being without the yard conclusive on the other hand. Again we cannot take space to quote the opinion, but, as in the Rush Case, supra, it classifies again the various ingraftments by judicial construction of exceptions, and in one phrase sums up the principle that supports the judgment we are here giving: "Those precautions have been adjudged several times to be inapplicable to certain peculiar and adverse conditions." Railroad Co. v. House (1896) 96 Tenn. 552, 555, 35 S. W. 561.

The case of Railroad Co. v. Dies (1897) 98 Tenn. 655, 41 S. W. 860, is, like the Wilson Case, another bulwark to the argument in favor of the plaintiff, and is, undoubtedly, a strong case in his favor on the right to claim under the statute. The first syllabus, indeed, if it were supported by the case, and the case itself had not been subsequently explained, if not modified, would be conclusive in the plaintiff's favor on this motion. The accident again was one happening in Memphis, on the Iron Mountain road. The engine and tender were running backward, and evidently not in the company's "yards," as understood by the supreme court, and, as we shall further see directly, were not considered by that tribunal as "engaged in switching." The engine was going in an opposite direction to the freight train from which it had just been detached, and on parallel tracks, very near together. The killing of the people happened at a street crossing, which they took without fault on their part, after the freight cars had passed, and just in front of the engine moving in the opposite direction. The locality was claimed to be within the yards, and held not to be, although switch tracks were there, and the place was used for switching. It was a better claim for being a switch yard than that made in this case, evidently. The company was held liable on the principle of the Wilson Case, supra. The case was put under the rule, and refused a place

within the exceptions. But it is not like this case after all, and, explained as it has been by a subsequent case, it is not averse to the judgment on this motion. In principle it is not like this case, because the running of the engine backwards was not shown to have been, as here, inevitable. For all we know, it could have been just as well run frontwise. Having been ruled, by the decision, out of the yards, it was not entitled to that broad protection afforded by that locality of itself. So, being outside, it was not within the facts permitting the exemption as to outside runnings or movements of cars and engines backwards in other places than the yards. They can do this outside only when they must; not for convenience, but from inevitable necessity, or from the compulsion of the predicament in which they are placed. That was the case we have in hand, and was not so in the Dies Case, or at least it is not shown to be so in the report of the case.

Finally, we have the unreported case of Railroad Co. v. Clarkson (1899),[1] in which Mr. Chief Justice Snodgrass takes occasion to explain both the Wilson and the Dies Cases as we have explained them here, and in which it is ruled distinctly that the emancipation from the statute claimed in this case does not depend upon the switching being within the yards, and may take place elsewhere, according to circumstances. The killing took place at Calhoun street, in Memphis, where there were two tracks running across the street,— the main track and a side track leading over to an alley and a switch track of the Compress Company. These had been used for switching purposes, and were being so used on this occasion. An engine had crossed the street on this side track, and was being backed on the main track to the company's yards, very much as in the Wilson Case and the Dies Case, if not identically like those cases. The court felt the necessity for an explanation of those cases, and it was made that in neither of those cases was it shown that the engine was "engaged in switching operations," and in neither case was it intended, says the court, "to charge the exception to the rule of switching, but to maintain it." The court ruled that in that case the company was entitled to show by evidence which the circuit court excluded by its charge that the locality "was a part of its switching arrangements," and that it was "legitimately engaged in switching operations," and the statute did not apply. It is true this was said of streets used for switching arrangements adjacent or near to the yards or depot grounds, and we have held it applies just as well in principle to switching arrangements more remote, perhaps, but still near enough to come within the necessities of the situation. And we go further, and hold that, under the decisions, whenever the company is compelled by the conditions to run trains or cuts of cars backwards without an engine in front, as the statute contemplates, the statute never applies, no matter how remote from a switching yard the exigency may arise. It must be compulsion, and not choice or convenience only. Here there were a main and side track with a turnout switch, or cross over, used to serve an industrial plant with cars for freights and supplies; a condition

---

[1] No opinion filed.

in which there must be, by the compulsion of the structure and the purposes of its use, the backward movement of engines and cars,—pushing instead of pulling them. The work could be done in no other way; and when going backward, as on this occasion, the statute does not apply. But the common law comes into play for the protection of all concerned whenever the engine is shifting the cars by such a backward movement as was used on this occasion, where three cars were being distributed on this side track for the benefit of the factory, the engine pushing them from the rear of the line of motion, being behind the cars, instead of in front, as the statute would require, if possible to run that way. Ruled accordingly.