## ALABAMA GREAT SOUTHERN R. CO. v. BROOKSHIRE.

### No. 10510.

Circuit Court of Appeals, Sixth Circuit.

Feb. 9, 1948.

Dawson Hall, of Chattanooga, Tenn. (Dawson Hall, of Chattanooga, on the brief; Whitaker, Hall & Haynes, of Chattanooga, Tenn., of counsel), for appellant.

Harry Berke, of Chattanooga, Tenn. (Harry Berke, of Chattanooga, Tenn., on the brief; Berke & Fleming and W. L. Tillett, all of Chattanooga, Tenn., of counsel), for appellee.

Before Hicks, SIMONS, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

This personal-injury damage action, brought in the Circuit Court of Hamilton County, Tennessee, was removed to the United States District Court on the ground of diversity of citizenship of the parties. Two railroads, in addition to the appellant Alabama Great Southern Railroad Company, were nominal defendants; but the judgment from which appeal has been taken

was rendered against appellant alone. The record does not disclose in what manner the other defendants were discharged from the case.

The declaration of the plaintiff contained four counts. The first count alleged common law negligence of the defendants as the direct and proximate cause of the plaintiff's injuries. The second count charged violation by defendants of section 2628, subsection 4, of the Code of Tennessee, hereinafter quoted; the third count charged them with the violation of section 2628, subsection 2, of the Tennessee Code, quoted below;[1] and the fourth count sounded in punitive damages.

A jury was impanelled and the case proceeded to trial. When the plaintiff rested upon his proof, the trial judge sustained the motion of appellant for a directed verdict on the third and fourth counts, and overruled its motion for a directed verdict on the first two counts of the declaration. When all the evidence in the case had been received, the defendant renewed its motion for a directed verdict on the first two counts. After hearing full argument, the district judge directed a verdict for defendant on the first or common law count; overruled the motion of appellant for a directed verdict on the second or statutory count; and *directed a verdict for the plaintiff* on that count, submitting to the jury only the assessment of compensatory damages. The jury rendered a verdict for the plaintiff in the amount of $12,000.

Subsequently, the district judge overruled the motion of appellant for the entry of judgment in accordance with its motion for a directed verdict made at the trial, and also overruled its alternative motion for a new trial except upon condition. The conditional order entered provided that a new trial would be granted unless the plaintiff should, within ten days by a writing filed with the clerk, remit all damages in excess of $3,750. The plaintiff accepted the remittitur of $8,250 in the manner required by the court order. The Alabama Great Southern Railroad Company has appealed from the final judgment entered against it.

The appellee was employed as a truck driver by a coal company in Chattanooga, Tennessee. He was injured in consequence of a collision between the automobile truck which he was driving and a cut of railroad cars at the intersection of Central Avenue, a busy thoroughfare within the corporate limits of Chattanooga, and certain railroad tracks adjacent to a local industrial plant.

He was driving south on Central Avenue and, at the intersection, had crossed over one railroad track upon which were standing a few coal or box cars which partially obscured his view to the east. He continued driving on to the second railroad track and his truck was struck by the train of appellant, approaching from his left and moving westwardly. His speed, at the time of the collision, was estimated at from 15 to 50 miles per hour; and the train was said to be proceeding slowly at a rate of speed between five and ten miles an hour.

The track over which appellee safely passed led into the switchyard of an industrial plant, but the track upon which his truck collided with the train was the mainline or lead track of the Central of Georgia Railroad Company. From his testimony, it appears that appellee, in crossing the railroad tracks, looked to his right—that is, to the west—as the front wheels of his truck went over the first rail of the first track. He did not look to his left until the front wheels of his truck went over the first rail of the second track. Almost instantaneously as he looked, his truck was struck by the lead car of a cut of cars consisting of one box car and two tank cars, pushed by an engine. The box car was the lead car; and the engine, in forward motion, was pushing the three cars from a position to the rear of all of them. A switchman had been stationed on top of the lead car to keep a lookout ahead and to signal to the engineer; the engineer, though stationed in a position at the rear of the three cars ahead, was also on the lookout and applied his

---

[1] "Whistle or bell to be sounded.—On approaching every crossing so distinguished, the whistle or bell of the locomotive shall be sounded at the distance of one-fourth of a mile from the crossing, and at short intervals till the train has passed the crossing."

emergency brakes when he received a signal from the switchman for an emergency stop. The switchman gave that signal when he saw that the truck would not stop before attempting to cross the second track, upon which the train was moving.

■ Without further detailing the evidence, we think it quite clear that there was no proof of negligence on the part of the appellant railroad company which, at common law in Tennessee, would render it liable to the appellee. The district court exercised sound judgment in holding that the proximate cause of the accident was the contributory negligence of the appellee, and in directing a verdict for the defendant on the first or common law count of the declaration. Moreover, there was no showing of a violation of section 2628, subsection 2, of the Tennessee Code; and, certainly, no case for punitive damages was established by the plaintiff. The action of the district court in directing a verdict for the defendant on the third and fourth counts was, therefore, undoubtedly right.

The second count of the declaration, upon which a verdict in favor of the appellee was directed, charged that appellant had violated section 2628, subsection 4, of the Code of Tennessee, which provides: "Lookout ahead; alarm whistle to be sounded, and all means employed to stop train, when. —Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident." In directing a verdict for the plaintiff, the district court reasoned that the defendant was liable to the plaintiff for violating the first clause of the foregoing statute, in that at the time of the accident no engineer, fireman, or other person, was on the locomotive "always upon the lookout ahead."

The section following section 2628 of the Tennessee Code provides: "Failure to observe precautions; and responsibility therefor.—Every railroad company that fails to observe the above precautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to person or property occasioned by, or resulting from, any accident or collision that may occur." Section 2629, Tennessee Code.

■ No opportunity was afforded appellant for observance of the precautions required by that portion of section 2628(4) of the Tennessee Code which exacts affirmative duties of the trainmen "when any * * * obstruction appears upon the road." The time of the appearance of the truck upon the railroad track was practically simultaneous with the collision. No liability of the defendant may be grounded, as the trial court properly held, upon that portion of the statute. See Gaines v. Tennessee Cent. Ry. Co., 175 Tenn. 389, 135 S. W.2d 441; Tennessee Cent. Railroad Co. v. Binkley, 127 Tenn. 77, 153 S.W. 59; Chesapeake & N. Ry. v. Crews, 118 Tenn. 52, 99 S.W. 368; Nashville, Chattanooga & St. Louis R. Co. v. Seaborn, 85 Tenn. 391, 4 S.W. 661; East Tennessee & V. Railroad Co. v. Swaney, 73 Tenn. 119; East Tennessee, U. & G. Railroad Co. v. Scales, 70 Tenn. 688. Cf. Opinion of Judge Denison, discussing the Tennessee authorities, in Southern R. Co. v. Matthews, 6 Cir., 29 F.2d 52. From his comments in colloquy with counsel, as well as from his statements to the jury when directing a verdict, it is manifest that the trial judge took full cognizance of these authorities.

The absolutism of the statute, however, has been repeatedly recognized by the highest court of Tennessee. As early as 1900 we find the State Supreme Court saying that the requirements of the statute are imperative; that their breach "gives a right of action, whether the non-observance of the statute was the proximate cause of the accident or not"; and that this had been frequently held. Railroad Co. v. Davis, 104 Tenn. 442, 450, 58 S.W. 296, 298. In Tennessee Cent. R. Co. v. Page, 153 Tenn. 84, 94, 282, S.W. 376, the Supreme Court of Tennessee, citing many of its previous opinions, declares that, while ordinarily contributory negligence when the proximate cause of an injury defeats recovery, a plaintiff's negligence, even though the direct and proximate

cause of his injury, will not bar his recovery against a railroad which has failed to observe the precautions required by the statute.

In Louisville & N. R. Co. v. Womack, 6 Cir., 173 F. 752, 756, Judge Lurton, who had formerly served as Chief Justice of the Supreme Court of Tennessee, asserted that the Tennessee statute had been construed by the courts of that state as entitling the plaintiff to recovery in a case where the statute is applicable, "irrespective of his own contributory negligence, however great"; and that this construction as to the absolute character of the statutory liability had been repeatedly followed by this United States Circuit Court of Appeals. See also opinion of Judge Knappen in Southern Ry. Co. v. Sutton, 6 Cir., 179 F. 471, 474. In Callaway v. Christison, 6 Cir., 148 F.2d 303, 304, Judge Hicks said: "It has been repeatedly held by the Supreme Court of Tennessee that the provisions of the statute are imperative and mandatory and require absolute obedience and this is true regardless of whether compliance appears to be either necessary or effective to prevent an accident." On the facts there presented, a judgment for the plaintiff on a jury verdict was affirmed.

When peremptorily instructing the jury, the district judge stated that the "lookout statute" has been construed by the courts of Tennessee to require that the locomotive must be in front of any train, string or cut of cars, in order to comply with the statute; and "there cannot be a lookout ahead upon the locomotive, unless the locomotive is in front." The court added that this statute is arbitrary and imperative; that its violation need not be the proximate cause of an injury in order to sustain recovery by an injured party; and that the statute "is in the nature of a penal regulation, for safety purposes, and the failure to observe the statute and injury following, creates liability."

From the era of the lighted squib to that of the incandescent lamp, common-law jurists have been constant in reasoning that, in the absence of statute, liability can be lawfully based only upon an act or omission, which directly and proximately causes

an injury. But legislative enactments may not be proscribed by common law; and "the construction given by the courts of the several states to the legislative acts of those states, is received as true, unless they come in conflict with the constitution, laws or treaties of the United States." Elmendorf v. Taylor, 10 Wheat. 152, 160, 23 U.S. 152, 160, 6 L.Ed. 289 (Chief Justice Marshall). We must, in duty bound, apply the Tennessee statute as interpreted by the Supreme Court of Tennessee to the best of our ability and understanding, regardless of our individual opinions as to the logical necessity for the extremely drastic interpretation which has been placed upon it.

Appellant lays emphasis upon the opinion in Southern Ry. Co. v. Simpson, 6 Cir., 131 F. 705, 708, where this court reversed the action of the trial court in directing a verdict for the plaintiff, who had been struck by a railway engine at a road crossing. It is important to observe that, at the time of the collision in that case, *the engine was being operated backward with its tender in front*. Moreover, the correctness of the decisions of the Tennessee Supreme Court in Little Rock & M. Railway Co. v. Wilson, 90 Tenn. 271, 16 S.W. 613, 13 L.R.A. 364, 25 Am.St.Rep. 693, and Railroad v. Dies, 98 Tenn. 655, 41 S.W. 860, to be hereinafter discussed, was not challenged. Indeed, it was stated that the statute prescribes that some person upon the locomotive shall always be upon the lookout ahead; and that, if the locomotive be at the rear or middle of the train, the spirit of the statute would not be obeyed, even though some person on the locomotive were constantly on the lookout ahead.

In Southern Railway Co. v. Owen, 142 Tenn. 1, 215 S.W. 270, 272, Judge McKinney, the opinion writer, quoted at length from the foregoing opinion and announced that the majority of the court followed it in holding erroneous an instruction to the jury to find for the plaintiff, if it should be found that the engine of the train which killed a colt at a public road crossing *was being operated backward with the tender ahead at the time of the accident*. He announced that he and the Chief Justice, two of the five judges, dissented, and thus stated their views: "While a case embodying the

exact state of facts presented by this record has not been passed upon heretofore by this court, nevertheless the statute involved has been before this court a number of times for interpretation, and the uniform construction placed upon it by this court has been that the liability of a railroad is absolute for killing a person upon its track by a backing engine and tender, *which are not engaged in switching within the company's yards.* Railroad Co. v. Wilson, 90 Tenn. 271, 16 S.W. 613, 13 L.R.A. 364, 25 Am.St.Rep. 693; Railroad Co. v. Acuff, 92 Tenn. [26], 34, 20 S.W. 348; Railroad v. Pugh, 95 Tenn. 419, 421, 32 S.W. 311; Railroad v. Dies, 98 Tenn. [655], 661, 41 S.W. 860; Railroad Co. v. Martin, 113 Tenn. 266, 287, 87 S.W. 418; [Nashville, C. & St. L.] Ry. v. Lovejoy, 138 Tenn. [492], 494, 198 S.W. 61." [Italics supplied.]

In the later case of Louisville & N. R. Co. v. Mayers, 147 Tenn. 315, the Supreme Court of Tennessee pronounced that the holding in the Owen case, supra, which "was bottomed on the opinion of Justice Lurton in the case of Southern Railway Co. v. Simpson, 6 Cir., 131 F. 705, 65 C.C.A. 563," should be confined to its facts. It was held that a railroad company, in running its train backward over a highway crossing with numerous cars being pushed ahead of the engine, was absolutely liable under the statute for injuries to persons riding in an automobile truck which was struck by the train. The Tennessee tribunal commented that it certainly was not intended in the Owen case to modify or overrule the holdings in the Wilson and Dies cases, which will now be discussed.

█ Little Rock & Railway Company v. Wilson, 90 Tenn. 271, 272, 16 S.W. 613, 13 L.R.A. 364, 25 Am.St.Rep. 693, was tried, without the intervention of a jury, by a special judge, Honorable W. D. Beard, afterwards Chief Justice of the Supreme Court of Tennessee who rendered judgment in favor of the plaintiff for damages for personal injuries sustained while drunk and asleep on the track of a railway company in Memphis, Tennessee. Wilson was run over by the front car of a train of nine cars, *which were being pushed into the railroad company's yard by an engine in the rear of the train.* The judgment was affirmed on appeal in a *clear-cut* holding that *the statute under consideration is complied with only when a train is moving forward by means of an engine at its front;* and that there is absolute liability upon a railway company for injuries inflicted when its train is moving backward, *or by means of an engine placed elsewhere than in front.*

The State Supreme Court adhered to and applied the doctrine of the Wilson case in Railroad v. Dies, 98 Tenn. 655, 660, 661, 662, 41 S.W. 860, 861, and held that, under the statute, the liability of a railroad company is absolute for the killing of a person upon its tracks by a backing engine and tender, which are not engaged in switching *within the company's yards.* The Supreme Court reasoned: "To hold a doctrine different from this [pronounced in the Wilson case] would be virtually to annul the provisions and requirements of the statute, inasmuch as a railroad company could absolve itself from all duty to comply with the requirements, because, forsooth, they had made it impossible to do so. It is no answer to say that the accident would have occurred in any event, even if the cars had been moving forward with the engine in front. How this is in any particular case cannot be known, and the railroad cannot be allowed to speculate upon probabilities, or to set up seeming certainties as an excuse for a plain statutory requirement. The plain language [of the statute] makes the company liable for all damages to person or property that may occur under such a condition of things. This ruling was recognized as correct in the case of Railroad v. Pugh, [11 Pickle 421], 95 Tenn. 421, 32 S.W. 311, and is in accord with the whole spirit of our law as illustrated in a number of cases. [Nashville & C.] Railroad Co. v. Smith, 6 Heisk. 174, [53 Tenn. 174]; [East Tennessee, V. & G.] Railroad Co. v. White, 5 Lea [540], 542, [73 Tenn. 540, 542]." Nashville C. & St. L. Railroad Co. v. Seaborn, 1 Pickle 391, 85 Tenn. 391, 4 S.W. 661, supra, was distinguished upon the ground that, there, the train was moving forward in the manner sanctioned by the statute.

In Southern Railroad Co. v. Brooks, 125 Tenn. 260, 265, 143 S.W. 62, 63, Chief Justice Shields said: "The provisions of this statute have been repeatedly held by this

court to be imperative and mandatory, and to require absolute obedience. They must be complied with, regardless of whether it appears they are necessary or will be effective to prevent an accident. [Citing cases.] When the precautions are not observed, the company is liable for the damages resulting from a collision."

Gordon v. Tennessee Cent. R. Co., 167 Tenn. 302, 69 S.W.2d 611, is not in point. There, the sole question was whether a gasoline motor car used by a section crew came within the purview of the statute; and the court held that it did not. Nor does Patton, Adm'r, v. Railway Company, 89 Tenn. 370, 15 S.W. 919, 12 L.R.A. 184, bear analogy. In that case, it was held that the statute in question has no application to the movement by impetus or gravitation of cars detached from the locomotive.

Appellant contends that Tennessee Code Section 2628, subsection 4, is not applicable upon the facts of this case, for the reason that the railroad company, at the time of the collision between the lead end of its cut of cars and the automobile truck in which appellee was riding, was engaged in "a necessary switching movement of freight cars from an industrial siding over a freight lead track within an area designated by the railroad company as a switching district, for the purpose of moving said cars to an area where trains are put together, where by reason of the industry's track facilities there was no way in which the engine could precede said freight cars but was compelled to push them, the engine being in forward motion."

Gordon v. Tennessee Cent. Ry. Co., supra, is cited to the effect that the statute should not be enlarged by implication. Appellant, in its brief, quotes the language of Judge Denison in Southern Ry. Co. v. Matthews (in which Judge Knappen dissented), 6 Cir., 29 F.2d 52, 54: "A study of the Tennessee cases, however, has convinced us that in order to find any consistent principle or principles of decision underlying all of the exceptions which the Tennessee court has found to the operation of the act, these exceptions must stand, and may rightly be interpreted as standing, upon either the lack of any possible causal re-

lation between absence of precaution and the 'accident,' or upon the clear impracticability of carrying out the statute to its literal extent." Another opinion of Judge Denison is also heavily stressed by the appellant. St. Louis & S. F. R. Co. v. Rutland, 6 Cir., 207 F. 287, 291, 292. In that case, the trial court had excluded evidence proffered by the defendant carrier tending to show the lack of any means whereby its engine, engaged in switching, could get back to its own track if it preceded the cars which it was delivering to another railroad. The object of the defendant was to show that if the freight cars preceded the engine, as they did and must have done, the statutory precautions were impossible. The exclusion of the evidence was held to be reversible error. The opinion writer stated that the proffered evidence should have been received and complete inquiry made into all the facts attending the question of what was practicable; and that, at the end of such inquiry, the conclusion might be one of fact for the jury, or the facts might permit only one inference. It was held that the incomplete record could not justify a conclusion of law that it was practicable to have the engine precede the cars, or that an existing impracticability was avoidable by the railroad company. The opinion directed especial attention to that of Judge Lurton in Southern Ry. Co. v. Simpson, 6 Cir., 131 F. 705, supra, and to a learned discussion in 1900 by District Judge Hammond in Towles v. Southern R. Co., C.C. W.D.Tenn., 103 F. 405, wherein it was held that the statutory requirements are not applicable to the operation of trains when, because of the locality or existing conditions, compliance with the statute is impossible in switching operations even beyond the "yards," "station grounds," or "depot grounds" of the railroad company; and that the exemption extends to any place where the railroad company must inevitably engage in movements and maneuvers that practically force it to move trains or cuts of cars by pushing, instead of pulling, by an engine.

■ It is well settled in Tennessee that observance by a railroad company of the prescribed statutory precautions is not re-

quired in "switching operations." Southern Ry. Co. v. Simpson, 149 Tenn. 458, 461, 261 S.W. 677. But what constitutes a "switching operation" under the Tennessee authorities is our problem. In 1895, the Supreme Court of Tennessee, in reversing a judgment against a railroad company and remanding for a new trial because of an erroneous instruction, held that the statutory precautions are not applicable to switching operations *within the yards, depot grounds and side-tracks* of a railway company when its employees are engaged in the distribution of detached cars, in the making up of trains, and in other necessary switching. Railroad v. Pugh, 95 Tenn. 419, 422, 32 S.W. 311. In Railroad v. House, 96 Tenn. 552, 555, 35 S.W. 561, a statement was made to the same effect; and, in Railroad v. Dies, 98 Tenn. 655, 660, 41 S.W. 860, 861, supra, it was said that "the statute does not apply to engines engaged in *switching cars in the yards of the company.*" [Italics supplied.]

Railroad Co. v. Martin, 113 Tenn. 266, 87 S.W. 418, decided in 1904, held that the facts in the record made out a case of absolute liability upon the part of the railroad company, in that the statutory requirements had not been observed by the railroad company where the crew members in charge of the train causing the accident *were not engaged in switching within the company's yard, but were employed outside the yard transferring cars from its north to its south station, and where the train was running on a main track and not on a switching track.* Railroad v. Dies, supra, and Railway Co. v. Wilson, supra, were cited. See also Chattanooga Station Co. v. Harper, 138 Tenn. 562, 577, 588, 199 S.W. 394, in which the switching operation, held to withdraw the case from the coverage of the statute, was *within the station limit.*

In Tennessee Cent. Ry. Co. v. Zearing, 2 Tenn.App. 451, 459, 460 (affirmed by Tennessee Supreme Court April 10, 1926), it was held that the operation of a train "within the switching district" does not relieve a railway company from compliance with the statute; but that the train must be engaged "in a switching operation." Admittedly, the accident had not occurred within the railroad "yards," but had happened at a point about three-fourths of a mile from the railroad company's yard limit. It seems fruitless to extend this opinion by discussion of the facts of that case. In affirming a judgment for the plaintiff, the court stated, however, that the trial judge might well have instructed the jury that the defendant was not engaged in a switching operation at the time of the collision. Citing Railroad v. Pugh, supra, the Tennessee Court of Appeals asserted that the statutory precautions are not required to be observed when the employees of a railway company are engaged in the distribution of detached cars, in the making up of trains, and in other necessary switching, *in and upon its yards, depot grounds and side-tracks.*

Finding that there was no material conflict in the evidence as to whether at the time of the accident the railroad company was engaged in a "switching operation" within the exception from coverage of the statute as carved out by the Tennessee decisions, the district judge considered it the duty of the court to decide that issue as a matter of law. He concluded upon the whole proof that, *inasmuch as the switching operation was not in the yards or depot grounds of appellant, the case did not fall within the excepted classification.* A verdict of liability against the defendant on the second count was, accordingly, directed because of non-compliance with the statute, in that at the time of the accident railroad cars were in front of the engine pushing them and, therefore, there was no engineer or other person on the locomotive upon the lookout ahead as required by the Tennessee statute.

In denying the motion of defendant for judgment non obstante veredicto or, in the alternative, for a new trial, the district court thus rejected the argument of appellant: "The statute is not applicable when a railroad company is running its engines and cars about its depots and yards, in making up its trains and switching its engines and cars from one track to another. * * * Was defendant's train at the time of the accident engaged in switching operations about or in its yards? The engine had gone into an industrial section of the city upon the tracks of another railroad and picked up a cut of cars. The arrangements were such that if the cars were brought out

the same way the engine went in, it was necessary that the cars be pushed in front of the engine. These cars were some two miles from the nearest regular switchyard used by the defendant. The train was upon a two and one-half or three mile journey through the City of Chattanooga and across a number of streets. Considering that the defendant used the same tracks and methods, new arrangements would have to be made for the engine to pull the cars from this spur. There seems to be a way that the train could have gone forward and around, but it does not appear that this defendant has permission to use this method, if such there be. Having in mind the purposes of this statute and considering the Tennessee court's narrow absolutism for non-observance, I think that a train moving several miles through a city over a single track, away from its switchyards and depots, is under the statute even though it be transporting cars in making up trains or placing cars at industrial plants."

While the evidence in the case is a bit confusing, we find no conflict in it and think the statements of the district judge which have been quoted correctly summarized the situation. The engineer testified that the train was on the Central of Georgia's industrial main line, or lead track, which goes on to Rossville, Georgia; and that the switching had already been completed at the Wilson and Company plant about a quarter of a mile from the point of the accident. A yard-master testified that the engine and cars were two or three miles from the place where the trains were made up. Admittedly, the movement of the train at the time of the accident was across a frequently traveled city street.

■ Viewing the entire evidence in the light most favorable to the defendant against whom the verdict was directed, *we find no evidence whatever that, at the time of the accident, the appellant was engaged in switching operations .within its yards, depot grounds, or on its side-tracks.* Therefore, the district judge, bound as he was to apply the Tennessee statute in all its rigidity, properly directed a verdict for the plaintiff on the second count of the declaration.

The judgment is affirmed.