Sneed, J.,
delivered the opinion of the court.
The train of the defendants, running on its road in Henry county, Tennessee, overran and killed the plaintiff’s cow under the following cirumstances, for the payment of *529 which she recovered a judgment in this action. The engineer testified as follows: N
“I was engineer on the train the morning of the accident, the eighteenth of October, 1872. It was passenger train No. 4. I was going down grade at the time of the accident, with my engine shut off. It was one of the steepest grades on that portion of the road, and is two miles long. I first discovered the cow about fifty yards in front of the engine, coming up an embankment towards the track. She was six or eight feet from the railroad, and approaching it, and was just beyond a deep cut. The train was at the moment running, I presume, about twenty-five miles per hour. As soon as I saw the cow, and before she had reached the track, I called for brakes, blew the cattle alarm, and put on the Westenhoüse air brakes, using one hand for each. This was done as soon as it could be done, and the brakes were working splendidly that morning. I struck the cow just at the abutment of a trestle, and knocked her off. I would have reversed my engine, but it was dangerous to do so at that point, with the train under full headway. I was afraid if I did so I would run off at the trestle. After I struck the cow I reversed my engine, and brought the train to a full stop at about seventy yards from where I sounded the call for brakes. That was as soon as I could stop the train going down that grade. I used all possible efforts to stop the train before the collision, and could not by any effort have stopped the train before the animal was struck. I blew the cattle alarm as soon as I saw the cow approaching the track, and continued to blow it until the accident occurred. The signal for brakes was blown, and the air brakes applied as soon as it could possibly be done after I discovered the cow.”
In the course of the judge’s charge, after stating correctly the general principles of law applicable to the case, he charged the jury as follows: “If the defendant failed to *530 observe either of these precautions, although the negligence ivas caused by an apprehension that the observance of them Would endanger the defendant’s own property, the plaintiff is entitled to a verdict for the value of her property.”
The precautions referred to by his Honor were those prescribed by the statute, that every railroad company shall keep the engineer, fireman, or some other person upon the locomotive constantly upon the lookout ahead, and when ainy person, animal, or other obstruction appears upon the road, alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop • the train and prevent the accident; and no company that observes these precautions shall be responsible for any damage done to person or property on its road. Code, secs. 1166, 1168 [Shannon’s Code, secs. 1574, 1576], We think a portion of the charge quoted, as applied to the facts of this case, is inaccurate and erroneous. The law-does not demand of a railroad company the sacrifice of human life, either the lives of the employees or of its passengers, in order to save a mere article of property. In this case the testimony raised a question of fact for the jury, whether in the perilous exigency referred ro in the proof it was possible to save the plaintiff’s property without peril to human life, and this question should have been submitted to the jury.
It will be 'observed that the witness states that every sjiecific precaution had been observed as prescribed by the statute. The precaution of reversing the engine,, known to be a dangerous venture at full speed and on a down grade, we presume was not unintentionally pretermitted in designating the special precautions to be observed by the company. Under the facts of the case, the court was without authority in assuming that the reason why there was no reversal of the engine, the defendant was apprehensive of mere danger to its property.
*531 The manifest meaning of the testimony is, that the danger apprehended was that of being thrown from the trestle and destroying human life on board. While the statute does not specify the act of reversing the engine as one of the precautions to be observed, its import nevert lieless is that this is one of the means to be resorted to when it can be done with safety. After naming the special precautions that are to be used, the statute proceeds, “and every possible means must be used to stop the train and prevent an accident.” The proper and only reasonable construction of this phraseology is, that things impossible to be done without peril to life or limb are not required. It is a fundamental principle of criminal jurisprudence that one has .a right to take a life to save his own, and it would be monstrous to hold that a railroad company has not employed every possible means to stop its train and prevent an accident, when the doing of the only thing omitted to be done might have resulted in the destruction of a score of human lives. The primary and paramount object of these rigid statutes was the protection of human life. The protection of property was a secondary consideration, but the courts should relax none of their rigor in enforcing them, even as to the merest article of chattel property that may happen to obstruct the road; for in the protection of property, human life is protected, and great perils to life and limb arrested.
The paramount duty of a railroad company, say the supreme court of Kentucky, through its agents intrusted with the care of a train, is to look to the safety of the person and property thereon, subordinate to which it is their duty to avoid unnecessary injury to animals straying upon the road. Louisville & Frankfort R. R. Co. v. Ballard, 2 Metc., 176. And to the same effect is a decision of the supreme court of Yermont, under a statute, however, not so rigid as ours. “Engineers are required,” say the court, "to use the ordinary means, the bell and the whistle, 10 *532 remove animals from the track, but- when such means fail, then the question whether the- engineer should stop the train, check or increase the speed if in his power, would depend upon what the safety of the passengers and train required. . . . Renis v. Conn. & Pass. R. R. Co., 42 Ver., 375.
We approve the principles of these cases, and think they are the true principles which govern cases like this, so far as they subordinate all things else to the security of human life.
Reverse the judgment and award a new trial.