*Railroad *v.* Dies.

(*Jackson.*    April  24,  1897.)

1. Railroads.  *Liability absolute, when.*

The liability of a railroad company is absolute for the killing of a person upon its track by a backing engine and tender, which are not engaged in switching within the company's yards. The statutory precautions apply in such case, and the manner of running the engine and tender precludes the possibility of observance.    (*Post, pp. 657–662.*)

Code construed: §§ 1574, 1575 (S.); §§ 1298, 1299 (M. & V.); §§ 1166, 1167 (T. & S.).

Cases cited and approved: Railway *v.* Wilson, 90 Tenn., 271; Railroad *v.* Pugh, 95 Tenn., 421; Railroad *v.* Smith, 6 Heis., 174; Railroad *v.* White, 5 Lea, 542.

Cited and distinguished: Railroad *v.* Seaborn, 85 Tenn., 391.

2. Contributory Negligence.  *In crossing railroad track.*

A person is not guilty of contributory negligence in passing at night behind a freight train, after waiting for it to pass, at a public crossing in a city, and is surprised and struck by an engine and tender backing silently and rapidly in an opposite direction along a parallel track only eight feet away, without any light or lookout, and without sounding bell or whistle. (*Post, pp. 662, 663.*)

3. Same.  *The duty to stop, look, and listen for train defined.*

The duty of a person about to cross a railroad track to stop, look, and listen is not absolute and universal.  This requirement must receive a reasonable construction, and the failure to observe it does not always constitute negligence.  (*Post, pp. 663, 664.*)

4. Verdict.  *Not reversible as excessive.*

Verdicts—$3,000 for killing a negro woman twenty-five years of age, and $2,500 for killing a negro boy twelve years of age—

---

*The authorities of the different States, on the duty to maintain a lookout on a railroad train, are found in a note to *Smith* v. *Norfolk & T. R. Co.* (N. C.), 25 L. R. A., 287.—Reporter.

---

Railroad v. Dies.

---

when the parties were guilty of no contributory negligence, and the facts would justify the giving of exemplary damages, will not be set aside as excessive in amount. (*Post, p. 664.*)

---

FROM SHELBY.

---

Appeal in error from Circuit Court of Shelby County. L. H. ESTES, J.

MORGAN & McFARLAND for Railroad Co.

WATSON & FITZHUGH for Dies.

WILKES, J. These actions are for damages for killing of Mary Jane Stiff and Wm. F. G. Irving by the defendant railroad company. The latter case is before us on original hearing and the former on petition for rehearing. The cases involve identically the same matters of fact and questions of law, the two parties, Stiff and Irving, having been killed at the same time and by the same collision. The railroad company was running an engine and tender, in charge of a hostler and his assistant, backward over its track through the city of Memphis, about nine o'clock of the night of July 26, 1895. This engine and tender had been detached from an incoming freight train, and was returning to the roundhouse for the night, while the freight train was being pushed into the yards of the company by a switch

engine which had been attached to its rear. The freight train and the road engine and tender were going in opposite directions upon parallel tracks, which were some six or eight feet apart.

The killing occurred at the crossing of Kentucky Avenue and Carolina Street. The two persons were a young negro woman, some twenty to twenty-five years of age, and a boy about twelve years old. They came down Carolina Street to the Kentucky Avenue crossing at the time when the freight train was crossing the street, and stopped for it to pass by. When it cleared the crossing they attempted to pass over the street, when they were run over and killed by the road engine and tender going to the roundhouse in the opposite direction. This point was not in the yards of the company, and the engine and tender were not engaged in switching, and they were not such an engine and tender as was used for switching, but were the ordinary road engine and tender. There was no headlight upon this engine, and no light upon the tender, which was in front as it proceeded backwards. There is a conflict as to the speed of the moving engine and tender, and as to whether the bell was rung, and as to the amount of light at the place, given by the city lights. There was the hostler and his assistant in the cab of the engine, but no one upon the tender, and the evidence is that the hostler and assistant could not see the track in front of the tender as it moved backward, because of its construction, and because coal

14 P—42

was piled upon it, but they could see each side of the engine and tender. There was no flagman at the crossing. Neither the hostler nor his assistant saw the parties when they went upon the track. The crossing was a public one, much used, and where persons were continually passing and had a right to pass.

While many errors are assigned and have been heretofore considered on the hearing of the first named case, the contention is now made, and renewed with much force and earnestness and ability, that the trial Judge erred in giving in charge to the jury Subsecs. 3 and 4 of Sec. 1574, Shannon's Code, and especially the latter, which is as follows: "Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive always on the lookout ahead, and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident." Section 1575 is: "Every railroad company that fails to observe these precautions, or cause them to be observed by its agents or servants, shall be responsible for all damages to persons or property occasioned by or resulting from any accident or collision that may occur."

The contention is that these sections are not applicable under the facts in the record, and should not, therefore, have been given in charge to the jury, the insistence being that the law will not re-

quire impossibilities, and that these deceased parties entered upon the track so near to the engine and tender that a compliance with the statutory precautions was impossible, and would have availed nothing so far as the prevention of the accident is concerned, and the case of *M. & C. Railroad* v. *Seaborn*, 1 Pick., 394, is again earnestly pressed upon our consideration as controlling. The contention of counsel for the railroad company is best put in his own forcible language: "We submit that the fact being evident that the appearance of deceased upon the track was so sudden as to have made it impossible to have complied, had the defendant been in condition to comply, should have answered this, and the burden should not have been thrown upon defendant of showing we were prepared to meet the contingency of doing an impossibility. What purpose could have been subserved to have shown full compliance—to have had a headlight, to have had some one on the lookout, if all these would have been ineffectual by reason of the sudden appearance. It would seem that this was requiring unnecessary and ineffectual measures, where they would, confessedly, have been ineffectual, and, under the Seaborn case, inapplicable."

The questions involved under this contention have received the consideration of this Court upon many occasions, and the matured conclusions of the Court have been expressed in a number of published opinions. Perhaps in none of them has the rule been so plainly

laid down as in the case of *Railway Co.* v. *Wilson,*
6 Pickle, 271. It was there held, that railway com-
panies, operating their trains over tracks laid in the
streets of a city, are required to comply strictly
with all the precautions prescribed by the statute for
the prevention of accidents on railroads. The rule
does not apply to engines engaged in switching cars
in the yards of the company. *Railroad Co.* v. *Pugh,*
11 Pickle, 421.

It is further held, in the case of *Railroad Co.*
v. *Wilson,* that these requirements apply to all trains
and engines propelled by steam, whether they are
moving forward or backward, and whether the en-
gine is at the front or rear, or at some interme-
diate point in the train. It is further held, and
such is the inevitable logic of the other propositions,
that when the train is being run backwards or by
means of an engine placed elsewhere than in front,
the liability of the company for injuries inflicted is
absolute, because the statutory precautions can only
be complied with when a train is moving forward
by means of an engine in front.

To hold a doctrine different from this would be
virtually to annul the provisions and requirements
of the statute, inasmuch as a railroad company could
absolve itself from all duty to comply with the re-
quirements, because, forsooth, they had made it im-
possible to do so. It is no answer to this to say
that the accident would have occurred in any event,
even if the cars had been moving forward with the

engine in front.    How this is in any particular case
cannot be known, and the railroads cannot be allowed
to speculate upon probabilities, or to set up seeming
certainties as an excuse for a plain statutory require-
ment.    The plain language of § 1575 makes the
company liable for all damages to person or property
that may occur under such a condition of things.
This ruling was recognized as correct in the case of
*Railroad* v. *Pugh*, 11 Pickle, 421, and is in accord
with the whole spirit of our law, as illustrated in a
number of cases.    *Railroad Co.* v. *Smith*, 6 Heis.,
174; *Railroad Co.* v. *White*, 5 Lea, 542.

We can add nothing to the force, and certainly
cannot make plainer, the principle laid down in the
Wilson case, that a railroad company may run its
engines, tenders, and trains backward if it prefers,
or sees proper to do so from convenience, necessity,
or other reason, but it will always follow that the
statute will make it liable for any and every injury
inflicted while doing so.    If any injury occurs, then
liability follows inevitably, and the only question to
be considered is the amount of the injury and the
extent, if any, of the contributory negligence of the
injured person.

It is only necessary, in regard to the case of
*Railroad* v. *Seaborn*, 1 Pick., 391, relied on by
counsel, to say that it was a case where the train
was moving forward in the manner sanctioned by
statute.    In such case excuses and defenses of im-
possibility of performance can be set up to avoid

liability, but when the train or engine is moving backward and injury results, the law imposes liability, and tolerates no excuse, the statute being openly violated and the penalty being fixed. In the present case, it may be that if the engine had been running in front with its headlight on, the injured parties' attention would have been arrested by it; it may be that the hostler and his assistant would have seen the parties in time to check the engine; it may be the sound of the bell or the alarm of the whistle might have caused them to turn back. We cannot speculate upon these probabilities, in the face of a statute which says, peremptorily, that the railroad shall be liable if injury occurs while the precautions are not observed — when the company has placed itself in such condition as to be unable to comply with the statute.

The only other question which could possibly arise upon the merits of the case was the contributory negligence of the injured persons; or, in other words, the liability being absolute for some amount, the only other inquiry is, what are the damages, and are they to any extent, and, if so, to what extent, mitigated by the contributory negligence of the injured persons? Upon this question the charge of the Court was correct, and, upon a careful examination and review of the evidence, we are unable to see any contributory negligence on the part of the two deceased persons. They passed behind the freight train at a public crossing, and had no means of knowing that an en-

gine and tender were moving in an, opposite direction on a parallel track only eight feet away. They had no warning. There was no headlight, no lookout, when it would avail to have a lookout, and there is evidence that the engine and tender were gliding rapidly, if not silently, over the crossing, without any light whatever in sight, and without bell or whistle. The deceased persons had no reason even to suspect that the engine and tender were upon the second track.

In this connection much stress is laid upon the obligation to stop, look, and listen before going over the tracks of a railroad. The evidence in this case is that the deceased parties did stop. They were compelled to do so, awaiting the passage of the freight train. These obligations to stop and look and listen must receive a reasonable construction and interpretation. It cannot be required that a person shall always stop or always look or always listen, but the requirement is that these precautions shall be so observed as to free the party from all negligence. A party cannot be required, for instance, to stop or listen when, on approaching a crossing, he can see a reasonable distance up and down the track so as to be certain he runs no risk in crossing. He cannot be required to listen if he is deaf or the noise of the surroundings is so great as to preclude all possibility of hearing. He cannot be held liable for negligence in failing to look when his view is absolutely cut off or so obstructed as that he can

see nothing until he is entering or has entered on the track. A person cannot be deemed negligent because he fails to stop at each track when there is a series of parallel tracks so near to each other that he can see as effectually by stopping once or by not stopping at all as by making continuous or repeated stops. So, too, it could not be deemed negligence for a traveler to fail to observe any of these precautions in cases where the railroad has a flagman at a crossing and he gives the signal for crossing in safety, nor where, in other ways, the railroad throws him off his guard by failing to exercise legal requirements and usual observances and ordinary caution, and thus leads him into real danger under an apparent aspect of safety.

The damages in this case are not excessive—$3,000 for the woman, $2,500 for the boy. The amounts do not indicate passion, prejudice, or caprice on the part of the jury, but are not more than compensatory, while the evidence would have justified the giving of exemplary or punitive damages. We see no error in the record, the petition to rehear is dismissed, and the judgment in each case is affirmed with costs.