## SOUTHERN RY. CO. v. SIMPSON.

(Circuit Court of Appeals, Sixth Circuit.   June 22, 1904.)

No. 1,292.

1. **FEDERAL COURTS—STATE STATUTES—CONSTRUCTION—STATE DECISIONS—CONCLUSIVENESS.**

   The opinion of a state court of last resort, construing a state statute, is conclusive on the federal courts sitting in such state to the extent only of the precise question decided.

2. **RAILROADS—INJURIES AT CROSSINGS—STATUTES—CONSTRUCTION.**

   Shannon's Code, §§ 1574–1576, requires every railroad company to keep some person on its locomotive always on the lookout ahead, and, when any person, animal, or other obstruction appears on the road, to sound the alarm whistle, put down brakes, and exercise every possible means to stop the train and prevent an accident, and renders a railroad company absolutely liable for an accident caused by a failure to comply therewith. *Held*, that such sections did not render the railroad company absolutely liable for a collision occurring in the daytime, while the engine was being operated backwards with the tender in front, and that the refusal of the court to charge that if the engineer was actually on the lookout ahead of his engine, and saw plaintiff's vehicle as soon as it could have been seen, as it approached and entered on the crossing, and the engineer immediately blew the alarm whistle, put down the brakes, and used every possible means to stop the train and prevent the accident, plaintiff could not recover, though the engine was being operated backwards, was error.

3. **STATUTORY OBLIGATION—PLEADING—AMENDMENT—DEPARTURE.**

   Where a declaration in an action for injuries at a railroad crossing alleged that defendant wrongfully and negligently ran its engine and cars against plaintiff, when crossing its track in a lawful and prudent manner, it stated a cause of action at common law and under Shannon's Code, §§ 1574–1576, requiring every railroad company to maintain a lookout ahead on the locomotive, etc., and rendering the company absolutely liable for damages occasioned by failure to comply with the act, though such act was not referred to in the declaration; and hence the amendment thereof, by adding a count specially declaring liability under the statute, did not constitute a departure.

4. **SAME—CONTRIBUTORY NEGLIGENCE.**

   In an action against a railroad company for injuries at a crossing, under Shannon's Code, §§ 1574–1576, requiring every railroad company to keep some person on its locomotive on the lookout ahead, and certain other precautions, and rendering such company absolutely liable for injuries occasioned by a failure to comply with such sections, contributory negligence is no defense.

5. **SAME—EVIDENCE.**

   Where a railroad company was not required by Shannon's Code, § 1574, to blow the whistle or ring the bell at a crossing at which plaintiff was injured, evidence tending to show a custom of the company, subsequent to the collision, to blow the whistle at such crossing, was inadmissible.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

¶ 1. State laws as rules of decision in federal courts, see notes to Griffin v. Overman Wheel Co., 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

See Courts, vol. 13, Cent. Dig. § 957.

The following is the opinion of Clark, District Judge, in the court below, on motion for new trial:

It is not deemed necessary to go over the facts of this case in detail. It will be sufficient to say that I have no doubt, on the facts of this case, that the plaintiff was guilty in law of contributory negligence. The doctrine which exempts him from imputed negligence of the hack driver is not to be understood as exonerating him from the consequences of his own personal negligence, and a man of full years and intelligent judgment is not permitted to get in the conveyance of another person, and approach and attempt to go over a dangerous crossing like this, without saying one word or doing one thing for the safety of himself. It is in his power either to suggest to the driver of the conveyance to stop, or to look, or to listen, or to take some other precaution reasonably suggested by the dangerous situation. If the driver should fail to do so, the passenger has the right to insist that the conveyance shall be stopped, and that the passenger be allowed to get out and discharge the duty of reasonable care for the protection of his own life, and it would be a startling announcement to say that the fact that imputed negligence is not recognized would, in its consequences, authorize a man to omit any precaution whatever to take care of himself. The decisions of the state Supreme Court, as I read and understand them (though the point is not free from doubt), so construe the statute of the state as to render the railroad company absolutely liable for an accident which occurs while a train is being moved by an engine coupled to that train with the tender in front, or when the engine is running backward. The Supreme Court seems not to have thought or considered whether, indeed, in many cases, the duty required by the statute might not be better discharged in this way than by having the engine headed forward. It would be difficult to find any substantial reason on which to base such a decision, but nevertheless it seems to be the established rule of that court, and such ruling is binding on this court. This being so, the right to recover could not be questioned, and it was the duty of the jury to assess the damages. The damages allowed should have been reduced by the plaintiff's contributory negligence.

There was one weak point in respect of the evidence introduced by the plaintiff, and that was the omission to sustain the plaintiff's own testimony by the surgeon or physician who had previously had charge of his surgical difficulties. It is not satisfactory, in fixing a serious responsibility on the defendant, to do so on the unsupported testimony of the plaintiff himself, who is without medical education or training, and a very interested party, it is needless to say. There is no doubt that whatever is in the plaintiff's case is the mere aggravation of previously existing injuries, and it is very doubtful if he has really suffered anything new, as distinguished from the mere aggravation of old injuries. I would have been much better satisfied with a verdict of $2,000 to $2,500 in this case, and, as the jury should have reduced the amount by contributory negligence, I think the verdict is excessive, and that the jury did not make such reduction. Conceding to the jury, however, the latitude which properly belongs to their discretion, I have concluded that the verdict may stand for the sum of $3,500, and that the plaintiff must agree to remit $1,000 of the recovery, or otherwise the verdict will be set aside and a new trial awarded. If the plaintiff shall voluntarily remit $1,000 of the damages, the motion for a new trial will be overruled. The plaintiff is allowed 10 days within which to signify to the clerk the course intended to be taken in this regard. If there is error in my reading and understanding of the Tennessee cases in relation to the statute, this is readily subject to review by the Circuit Court of Appeals, and the question is one which it may be very desirable and of practical importance to have reviewed.

Ordered accordingly.

Jourolmon, Welcker & Hudson, for plaintiff in error.

X. Z. Hicks, D. A. Wood, and Lucky, Sanford & Fowler, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The plaintiff below sustained an injury by collision with a railway engine while crossing the railway track at a road crossing. Upon the conclusion of all the evidence the court instructed the jury to return a verdict for the plaintiff, and submitted to them the question of amount of damages only. This instruction was predicated upon an interpretation of a provision of the Tennessee Code requiring railroad companies to exercise certain precautions in the operation of their trains to prevent collision with persons or objects on the track. That requirement is in these words:

"Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident."

"Every railroad company that fails to observe these precautions, or cause them to be observed by its agents and servants shall be responsible for all damages to persons or property occasioned by, or resulting from, any accident or collision that may occur."

"No railroad company that observes, or causes to be observed these precautions shall be responsible for any damage done to person or property on its road. The proof that it has observed said precautions shall be upon the company."

Shannon's Code Tenn. §§ 1574–1576.

The engine at the time of the collision was being operated backwards, the tender being in front. The court denied a request by the railroad company to instruct the jury as follows:

"If the engineer was actually upon the lookout ahead of his engine, and saw the vehicle in which plaintiff was riding as soon as it could have been seen as it approached and entered upon the railroad crossing, and immediately blew the alarm whistle, put down the brakes, and used every possible means to stop the train and prevent the accident, then plaintiff cannot recover, notwithstanding the engine was at the time being operated backwards, because this would be a full compliance with the Tennessee statute."

Touching the meaning of section 1574, Shannon's Code Tenn., set out above, District Judge Clark said to the jury:

"The statute does not, according to any just import of the language, require that the engine and tender shall be run headforemost, or that it shall not be run with the tender in front, as was being done in this case; and as an original proposition it is difficult to find any ground upon which to put an interpretation on the statute which would make it mean that it prohibits the railroad company from running its engine with the tender in front, if it chooses to do so, or that it requires any more than, if the engine is so run, that some one shall be kept on the lookout ahead, and be in a position to see ahead."

The learned judge, however, deemed himself precluded from the right to exercise an independent judgment as to the meaning of the statute, because he was under obligation to follow the interpretation of the statute by the Supreme Court of Tennessee in the case of Railroad v. Dies, 98 Tenn. 655, 41 S. W. 860, and accordingly instructed the jury that the running of an engine backwards was a violation of the statute, and the company liable for any collision, without regard to whether the "engineer was in a position to see, and did see, and did comply with all the requirements of the statute."

Neither the case of Railroad v. Dies, nor any other Tennessee case, has ever involved the precise question presented by the instruction de-

nied, or required the Tennessee court to decide that the statute was violated whenever an engine was run backwards, without regard to the circumstances. Confessedly the statute does not in terms require the engine to run either backwards or forwards. A literal compliance with the statute would not under all circumstances be a compliance with its requirements. Thus the statute prescribes, among other things, that some person upon the locomotive shall always be upon the lookout ahead; but if the locomotive be at the rear of the train, or in the middle thereof, the spirit of the statute would not be obeyed, although some person upon the locomotive so situated should be always upon the lookout ahead. In such a situation the lookout upon the locomotive could not be upon the lookout ahead of the train, and the plain purpose of the statute would be evaded. Upon this consideration the Tennessee court held that the statute was not complied with by the operation of a train through the streets of a city by an engine in the rear. Railway Co. v. Wilson, 90 Tenn. 271, 16 S. W. 613, 13 L. R. A. 364, 25 Am. St. Rep. 693.

Neither does the statute in terms require an engine to be equipped with a headlight. But the effectiveness of a lookout would be practically destroyed by the neglect of a company to employ the ordinary means employed by railroad companies to make a lookout effective, and upon this consideration the Tennessee court construed the statute as having been violated by the operation of an engine upon a dark night without a headlight. Railroad v. Smith, 6 Heisk. 174. But this construction of the statute, by which it was read as requiring a locomotive to be equipped with a headlight when running at night, would not justify the requirement of a headlight when running in the daytime; for such an equipment would not add to the effectiveness of the lookout, and cannot by implication be added to the requirement of the statute under such conditions. In pursuance of the same considerations in respect of the implied requirement to make the lookout upon the locomotive effective as a lookout ahead, the Tennessee court in Railroad v. Dies, 98 Tenn. 655, 41 S. W. 860, held the statute had not been complied with by running a road engine backwards, without a headlight on the tender, through and across the streets of a city, at night. In the case last cited the effectiveness of the lookout upon the engine being run backwards was destroyed by the existence of conditions not found in the case now before us.

Under the facts of the Dies Case compliance with the statute in respect to a lookout ahead was impossible, and, as stated by Justice Wilkes, the railway company could not "absolve itself from all duty to comply with the requirements, because, forsooth, they had made it impossible to do so." But in the case under consideration the locomotive was being operated in daylight, and the absence of a headlight, which was the pregnant circumstance destroying the effectiveness of the lookout in the Dies Case, can cut no figure whatever. There was evidence in the case on hearing tending to show that the effectiveness of the lookout was not in fact impeded or lessened by the fact of the backward operation of the locomotive, and the request for an instruction submitted to the jury the question as to whether the lookout actually "saw the vehicle in which the plaintiff was riding as soon as it

could have been seen as it approached and entered upon the railroad crossing," and whether, when the object did appear upon the track, or within striking distance, all of the requirements of the statute were complied with, so far as was possible.

In every one of the cases cited above, and relied upon by defendant in error to establish the contention that the Tennessee court has authoritatively construed the statute as requiring the locomotive to be at all times run forwards, under penalty of absolute liability, without regard to circumstances, it plainly appeared that under the facts of the case the company had, to again quote from Railroad v. Dies, "placed itself in such condition as to be unable to comply with the statute" in respect to keeping an effective lookout ahead. If the facts in this case should establish that the company, in operating its locomotive backwards, did not "place itself in such a condition as to be unable to comply with the statute," but, upon the contrary, was in a condition to comply with the statute, and did in fact comply, it would be evident that this case is not necessarily governed by the case cited, but is plainly distinguishable.

We recognize the duty of following the construction placed upon a state statute by the highest court of the state. Western & Atlantic R. Co. v. Roberson, 61 Fed. 592, 604, 9 C. C. A. 646; Byrne v. K. C., Ft. S. & M. R. Co., 61 Fed. 605, 9 C. C. A. 666, 24 L. R. A. 693. That there are general expressions in the opinion of Judge Wilkes in Railroad v. Dies tending to support the contention that the statute is violated when an engine is run backwards, without regard to whether the company was thereby disabled from maintaining an effective lookout or not, must be conceded. But no such broad question was involved, and the actual decision was put upon the ground that the company had, by running its engine backwards at night, without a headlight, disabled itself from complying with that part of the statute requiring an effective lookout ahead. The opinion as a construction of the statute is authoritative to the extent of the precise question decided, and no farther. Nothing more was necessary to the determination of the rights of the parties to that controversy.

Concerning the authority of an opinion, Chief Justice Marshall, in Cohens v. Virginia, 6 Wheat. 399, 5 L. Ed. 257, said:

"It is a maxim not to be disregarded that general expressions in every opinion are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

This is the rule applied by the Tennessee court to its own decisions. In L. & N. R. R. Co. v. County Court, 1 Sneed, 639, 696, 62 Am. Dec. 424, it is said that:

"The reasoning, illustrations, or references contained in a judicial opinion are not authority, but only the points in judgment, arising in the particular case before the court. The generality of the language used in an opinion is, therefore, always to be restricted to the case before the court, and is only authority to that extent."

There is nothing in the statute itself which forbids its construction and interpretation according to the well-settled principles applicable to the interpretation of statutes generally, and there is nothing in the Tennessee decisions which forbids the application of the ordinary principles of interpretation, where the duty of applying and construing the statute is required. Thus the statute has been construed as not requiring impossibilities, and, if everything is done which it was possible to do to stop the train or prevent a collision after an object appears on the track, liability is escaped, although everything required by the statute had not been done. Railroad v. Scales, 2 Lea, 688; Railroad v. Swaney, 5 Lea, 119, 121. So, if to reverse the engine under the circumstances would seriously endanger the safety of the train, that requirement has been excused. Routon v. Railroad Co., 1 Tenn. Cas. 528; Railroad v. Troxlee, 1 Lea, 520.

The statute has been held not to apply at all in the yards of the company, or when engaged in switching operations. Cox v. Railroad, 2 Leg. Rep. 168; L. & N. R. Co. v. Conner, 2 Baxt. 385; Railroad v. Pugh, 95 Tenn. 419, 32 S. W. 311. Neither does the statute apply to the rear section of a freight train broken in two by accident, when the broken section is following by gravity. Patton v. Railroad, 89 Tenn. 372, 15 S. W. 919, 12 L. R. A. 184. We therefore reach the conclusion that the question of construction and application presented by the request of the defendant company was not authoritatively controlled by any decision of the Tennessee court, and that the request embodied a sound and reasonable view of the statute and should have been given, and that it was error to deny same and to instruct the jury to find for the plaintiff.

The plaintiff amended his declaration by the addition of a count which declared specially upon the liability of the company under sections 1574–1576 of Shannon's Tennessee Code, being the provisions heretofore set out, imposing liability upon railroad companies not observing certain precautions in the operation of their trains. The defendant pleaded the Tennessee statute of limitations of one year to this additional count, upon the theory that this amendment introduced a new cause of action against which the statute had run before action brought. This plea was stricken out, and this ruling is now assigned as error.

The statute prescribes the precautions to be observed to avoid collision with objects and persons upon a railway track, and imposes liability for all damages resulting to the person or object directly resulting from a collision when the precautions are not observed, and absolves the company from all liability when the requirements have been complied with. The original declaration stated as a cause of action that the defendant company had wrongfully and negligently run its engine and cars upon and against the plaintiff when crossing its track in a lawful and prudent manner. It did not refer to the statute. But this was unnecessary. The case stated, if made out, was a case against the company under the local statute, as well as at common law, and the plaintiff, without declaring upon the statute, was entitled to proceed against the company for negligent nonobservance of the requirements of the local statute, without especially declaring upon it. The statute was a public law of the state in which the injury had been inflicted, and

in which the suit was pending, and the court below was bound to take notice of such a statute, as well as of the principles of the common law. Stephens on Pleading, 347. The declaration was, before amendment, one under which, by the pleading and practice in the Tennessee courts, the plaintiff was entitled to rely upon the provisions of the statute. Railroad v. Pratt, 85 Tenn. 9, 1 S. W. 618. The amendment, by adding a count specially declaring under the statute, was not, therefore, a departure in law or fact from the cause of action stated in the declaration as originally filed, because the plaintiff could have relied upon statutory negligence, as well before as after the amendment. The case is clearly distinguishable from Union Pacific R. Co. v. Wyler, 158 U. S. 285, 15 Sup. Ct. 877, 39 L. Ed. 983, for this reason, as well as for other reasons which need not be alluded to.

The crossing where this collision occurred was not designated by a signboard, as required by the first paragraph of section 1574, Shannon's Code Tenn. Unless so designated, the company is not obliged to blow the whistle or ring the bell. Railroad v. McDonough, 97 Tenn. 255, 37 S. W. 15; Southern Ry. Co. v. Elder, 81 Fed. 791, 26 C. C. A. 615. The plaintiff below was permitted, over objection, to prove that the defendant nevertheless customarily blew for this crossing, and "that they now blow all the time." He had before testified that upon this particular occasion the whistle was not blown or the bell rung. At the time that this evidence was offered the plaintiff admitted that he did not rely upon the failure of the defendant to whistle as a ground for recovery, but desired to prove that it customarily did whistle, for its bearing upon the matter of his own conduct in going upon the crossing at the time and under the conditions shown by the evidence. The evidence was thereupon admitted. The court was asked to exclude any evidence of the habit of the company to whistle since the accident, but this was denied.

The negligence of the plaintiff is not a bar to a recovery of damages for an injury, where the requirements of the Tennessee statute, heretofore cited, have been disobeyed. In such cases negligence of the plaintiff must operate to mitigate the damages, but does not defeat the action. Western & Atlantic R. Co. v. Roberson, 61 Fed. 592, 9 C. C. A. 646. The evidence admitted tending to show a settled custom to blow at this crossing, if known to the plaintiff, would have some bearing upon the degree of plaintiff's negligence if he undertook to cross without stopping or looking before crossing the track at grade, and under proper instruction guarding against other use was admissible. But it was clearly not competent to show the custom of the company after the collision, for that could have had no influence upon plaintiff's conduct.

For the errors indicated, the judgment must be reversed, and remanded for a new trial.