# SUPREME COURT OF TENNESSEE

### FOR THE

## EASTERN DIVISION.

### KNOXVILLE, SEPTEMBER TERM, 1919.

*(Continued from Vol. 141.)*

SOUTHERN RAILWAY COMPANY *v.* R. M. OWEN.*

*(Knoxville.* September Term, 1919.)

1. **RAILROADS.** No liability for killing stock merely because engine was reversed.

In an action for killing a colt on a public road crossing, where engineer testified · he was on the lookout, it was error to instruct the jury to find for plaintiff, if they found that the engine of the train was being operated backward, with the tender ahead, contrary to Shannon's Code, sections 1574-1576, and that the only question after such determination was the amount of damages. (*Post, pp.* 1-5.)

---

*On duty of railway company to keep lookout for stock on track, see notes in 25 L. R. A., 291, and 24 L. R. A. (N. S.), 858.

Cases cited and approved: Railroad v. Dies, 98 Tenn., 655; Railroad Co. v. Wilson, 90 Tenn., 271; Railroad v. Smith, 53 Tenn., 174; Western & Atlantic R. Co. v. Roberson, 61 Fed., 592; Byrne v. K. C., Ft. S. & M. R. Co., 61 Fed., 605; Railroad Co. v. Acuff, 92 Tenn., 34; Railroad v. Pugh, 95 Tenn., 421; Railroad v. Martin, 113 Tenn., 287; Railway Co. v. Lovejoy, 138 Tenn., 494.

Case cited and distinguished: Southern Railway Co. v. Simpson, 131 Fed., 705.

Code cited and construed: Secs. 1574-1576 (S.).

2. **RAILROADS. No liability for killing of stock merely because engine was reversed.**

In an action for killing a colt on a public road crossing it was error to refuse railroad's requested instruction that if the colt came upon the track immediately in front of the backing tender of the engine, and so near that no means could be taken to stop the train and avoid the accident, the engineer being on the lookout, and the appearance of the colt being so sudden that he could not have seen it in time, then the railroad was not liable merely because its engine was running reversed, contrary to Shanon's Code, sections 1574-1675. (*Post, pp.* 5-13).

LANSDEN, C. J., and McKINNEY, J., dissenting.

---

FROM KNOX.

---

Appeal from the Circuit Court of Knox County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court.—HON. JOHN B. HOLLOWAY, Judge.

*Susong & Briddle* and *John R. King,* for appellant. JAS. A. CARRIGER, for appellee.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

R. M. Owen intituted this suit against the Southern railway Company to recover damages for the killing of a colt by one of its trains. The colt was killed on a public road crossing about sundown.

The railroad defended on the ground that the engineer was on the lookout ahead; that the colt did not appear upon the track in time for it to be seen, and in time for the engineer to comply with the statutory precautions.

The accident occurred some distance east of Morristown, and it is not claimed that it happened within the switchyards of the company. The train was running west towards Morristown at the rate of 20 or 25 miles per hour, and was composed of a tender, engine, and caboose. The caboose was attached to the pilot end of the engine and the engine was being run backward with the tender first. The engineer testifies that he was in his cab, was on the lookout ahead, and did not see the animal at all.

There was a judgment in the circuit court for $100, which was affirmed by the court of civil appeals, and the case is in this court by writ of *certiorari.*

The railroad assigns as error the following part of the court's charge, viz.:

"As applicable to this case, if you should find that the railroad company was running its train backward, or that its engine was running backward, and that the accident occurred while it was being thus operated, you should find in favor of the plaintiff. (Court reading.)

A railroad company may run its engines, tenders, and trains backward if it prefers, or sees proper to do so from convenience, necessity, or other reason, but it will always follow that the statute will make it liable for any and every injury inflicted while doing so. If any injury occurs, then liability follows, inevitably, and the only question to be considered is the amount of the injury and the extent, if any, of the contributory negligence of the injured person.

"So, if you should find that at the time of this accident, the railroad company was operating its engine, was running it backward, with the tender in front of the engine, then the only question you determine is the extent of the injury or damage, which would be the value of the animal killed, provided the plaintiff was not guilty of such contributory negligence as would reduce the amount of the recovery. If he was guilty of nothing except allowing this animal to go from one field, where it was in the pasture, down to the creek, and back to his barn, and it was not what is known in law as running at large; that is, not such contributory negligence as would defeat his recovery, nor would it be such contributory negligence as would necessarily have to be considered in reducing the amount of the recovery.

"So that, as applicable to this case, if you find that at the time of the accident the railroad company's engine was being operated backward, the tender running in front of its engine, backing, with the tender in front, and not running the ordinary way, then the only question you consider is the amount of damages plaintiff is entitled to recover."

And they further assign as error the failure of the court to charge the following, viz.:

"I instruct you that if you should find that the colt killed in this case came upon the track of the railway immediately in front of the backing tender of the engine, and so near thereto that there was no time to observe the statutory precautions, that is, to sound the alarm, put on the brakes, or take other means to stop the train and avoid the accident, and if you should further find that the engineer was upon the lookout in position to see, and that because of the sudden appearance of the colt, and its nearness to the tender, he could not have seen and did not see the colt upon the track, and if you should find that the fireman was necessarily engaged in firing the engine, and for that reason was not upon the lookout, then the defendant would not be liable merely for the reason that the engine was being backed."

A majority of the members of the court are of the opinion that these assignments of error should be sustained, and adopt as their reason for so holding the opinion of Justice LURTON in the case of *Southern Railway Co. v. Simpson,* 131 Fed., 705, 65 C. C. A., 563; so much of said opinion as relates to this question being as follows:

"The plaintiff below sustained an injury by collision with the railway engine while crossing the railway track at a road crossing. Upon the conclusion of all the evidence the court instructed the jury to return a verdict for the plaintiff, and submitted to them the question of amount of damages only. This instruction was predicated upon an interpretation of a provision

of the Tennessee Code requiring railroad companies to exercise certain precautions in the operation of their trains to prevent collision with persons or objects on the track.   That requirement is in these words:

" 'Every railroad company shall keep the engineer, fireman, or some other person upon the locomotive, always upon the lookout ahead; and when any person, animal, or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.'

" 'Every railroad company that failes to observe these precautions, or cause them to be observed by its agents and servants shall be responsible for all damages to persons or property occasioned by, or resulting from any accident or collision that may occur.'

" No railroad company that observes, or causes to be observed these precaution shall be responsible for any damage done to person or property on its road. The proof that it has observed said precautions shall be upon the company.'

"Shannon's Code Tenn. Sections 1574–1576.

"The engine at the time of the collision was being operated backwards, the tender being in front.   The court denied a request by the railroad company to instruct the jury as follows:

" 'If the engineer was actually upon the lookout ahead of his engine, and saw the vehicle in which plaintiff was riding as soon as it could have been seen as it approached and entered upon the railroad crossing, and immediately blew the alarm whisle, put down

the brakes, and used every possible means to stop the train and prevent the accident, then plaintiff cannot recover, notwithstanding the engine was at the time being operated backwards, because this would be a full compliance with the Tennessee statute.'

"Touching the meaning of section 1574, Shannon's Code Tenn., set out above, Dictrict Judge Clark said to the jury:

" 'The statute does not, according to any just import of the language, require that the engine and tender shall be run headforemost, or that it shall not be run with the tender in front, as was being done in this case; and as an original proposition it is difficult to find any ground upon which to put an interpretation on the statute which would make it mean that it prohibits the railroad company from running its engine with the tender in front, if it chooses to do so, or that it requires any more than, if the engine is so run, that some one shall be kept on the lookout ahead, and be in a position to see ahead.'

"The learned judge, however, deemed himself precluded from the right to exercise an independent judgment as to the meaning of the statute, because he was under obligation to follow the interpretation of the statute by the Supreme Court of Tennessee in the case of *Railroad* v. *Dies,* 98 Tenn., 655, 41 S. W., 860, and accordingly instructed the jury that the running of an engine backwards was a violation of the statute, and the company liable for any collision, without regard to whether the 'engineer was in a position to see, and did see, and did comply with all the requirements of the statute.'

"Neither the case of *Railroad* v. *Dies,* nor any other Tennessee case, has ever involved the precise question presented by the instruction denied, or required the Tennessee court to decide that the statute was violated whenever an engine was run backwards, without regard to the circumstances. Confessedly the statute does not in terms require the engine to run either backwards or forwards. A literal compliance with the statute would not under all circumstances be a compliance with its requirements. Thus the statute prescribes, among other things, that some person upon the locomotive shall always be upon the lookout ahead; but if the locomotive be at the rear of the train, or in the middle thereof, the spirit of the statute would not be obeyed, although some person upon the locomotive so situated should be always upon the lookout ahead. In such a situation the lookout upon the locomotive could not be upon the lookout ahead of the train, and the plain purpose of the statute would be evaded. Upon this consideration the Tennessee court held that the statute was not complied with by the operation of a train through the streets of a city by an engine in the rear. *Railway Co.* v. *Wilson,* 90 Tenn., 271, 16 S. W., 613, 13 L. R. A., 364, 25 Am. St. Rep., 693.

"Neither does the statute in terms require an engine to be equipped with a headlight. But the effectiveness of a lookout would be practially destroyed by the neglect of a company to employ the ordinary means employed by railroad companies to make a lookout effective, and upon this consideration the Tennessee court construed the statute as havig been violated by the operation of an engine upon a dark night without a headlight. *Railroad*

v.*Smith*, 6 Heisk., 174. But this construction of the statute, by which it was read as requiring a locomotive to be equipped with a headlight when running at night would not justify the requirement of a headlight when running in the daytime; for such an equipment would not add to the effectiveness of the lookout, and cannot by implication be added to the requirement of the statute under such conditions. In pursuance of the same considerations in respect of the implied requirement to make the lookout upon the locomotive effective as a lookout ahead, the Tennessee court in *Railroad* v. *Dies*, 98 Tenn., 655, 41 S. W., 860, hell the statute had not been complied with by running a road engine backwards, without a headlight on the tender, through and across the streets of a city, at night. In the case last cited the effectiveness of the lookout upon the engine being run backwards was destroyed by the existence of conditions not found in the case now before us.

"Under the facts of the Dies Case compliance with the statute in respect to a lookout ahead was impossible, and, as stated by Justice Wilkes, the railway company could not 'absolve itself from all duty to comply with the requirements, because, forsooth, they had made it impossible to do so.' But in the case under consideration the locomotive was being operated in daylight, and the absence of a headlight, which was the pregnant circumstance destroying the effectiveness of the lookout in the Dies Case, can cut no figure whatever. There was evidence in the case on hearing tending to show that the effectiveness of the lookout was not in fact impeded or lessened by the fact

of the backward operation of the locomotive, and the request for an instruction submitted to the jury the question as to whether the lookout actually 'saw the vehicle in which the plaintiff was riding as soon as it could have been seen as it approached and entered upon the railroad crossing,' and whether, when the object did appear upon the track, or within striking distance, all of the requirements of the statute were complied with, so far as was possible.

"In every one of the cases cited above, and relied upon by defendant in error to establish the contention that the Tennessee court has authoritatively construed the statute as requiring the locomotive to be at all times run forwards, under penalty of absolute liability, without regard to circumstances, it plainly appeared that under the facts of the case the company had, to again quote *Railroad* v. *Dies,* 'placed itself in such condition as to be unable to comply with the statute' in respect to keeping an effective lookout ahead. If the facts in this case should establish that the company, in operating its locomotive backwards, did not 'place itself in such a condition as to be unable to comply with the statute,' but upon the contrary, was in a condition to comply with the statute and did in fact comply, it would be evident that this case is not necessarily governed by the case cited, but is plainly distinguishable.

"We recognize the duty of following the construction placed upon a state statute by the highest court of the State. *Western & Atlantic R. Co.* v. *Roberson,* 61 Fed., 592, 604, 9 C. C. A., 646; *Bryne* v. *K. C., Ft. S. & M. R. Co.,* 61 Fed., 605, 9 C. C. A., 666, 24 L. R. A.,

693. That there are general expressions in the opinion of Judge Wilkes in *Railroad* v. *Dies,* tending to support the contention that the statute is violated when an engine is run backwards, without regard to whether the company was thereby disabled from maintaining an effective lookout or not, must be conceeded. But no such broad question was involved, and the actual decision was put upon the ground that the company had, by running its engine backwards at night, without a headlight, disabled itself from complying with that part of the statute requiring an effective lookout ahead. The opinion as a construction of the statute is authoritative to the extent of the precise question decided, and no farther. Nothing more was necessary to the determination of the rights of the parties to that controversy."

It results that this case will be reversed and remanded for a new trial.

The writter of this opinion regrets that he cannot concur with the majority in their conclusions. While a case embodying the exact state of facts presented by this record has not been passed upon heretofore by this court, nevertheless the statute involved has been before this court a number of times for interpretation, and the uniform construction placed upon it by this court has been that the liability of a railroad is absolute for killing a person upon its track by a backing engine and tender, which are not engaged in switching within the company's yards. *Railroad Co.* v. *Wilson,* 90 Tenn., 271, 16 S. W., 613, 13 L. R. A., 364, 25 Am. St. Rep., 693; *Railroad Co.* v. *Acuff,* 92 Tenn., 34, 20 S. W., 348; *Railroad* v. *Pugh,* 95 Tenn., 421, 32 S. W., 311 *Railroad* v. *Dies,* 98 Tenn., 661, 41 S. W., 860;

*Railroad* v. *Martin,* 113 Tenn., 287, 87 S. W., 418; *Railway Co.* v. *Lovejoy,* 138 Tenn.. 494, 198 S. W., 61.

A locomotive engine, as defined in Webster's International Dictionary, is: "A self-propelling wheel carriage, especially one which bears a steam boiler and one or more steam engines, which communicate motion to the wheels and thus propel the carriage, used to carry goods or passengers, or to draw wagons, railroad cars, etc."

It will thus be seen that a tender (which carries supplies for the locomotive) is not a part of the locomotive.

If, under a proper construction of the statute, the locomotive can be run backward with the tender ahead of it, why not attach a coal car or a dozen flat cars ahead, and relieve the railroad of liability, where it is shown that the engineer was on the locomotive on the lookout ahead, and that his view was not obstructed by the cars?

I think that the legislature, in the enactment of the statute, had in mind a fixed, definite idea as to the position and location of the locomotive, and that it did not intend that the locomotive could be either in front, the middle, or the rear of the train, and run either forward or backward, provided some one on the locomotive was always on the lookout ahead, and provided, further, that the vision of the track ahead was not obstructed.

Bearing in mind that the purpose of the statute is the prevention of accidents, if any doubt exists as to the proper interpretation of the statute, that construction should be given by the courts which more nearly brings about the obvious purpose of the statute. And since, as was shown in the Dies Case, the tender, in

Southern Ry. Co. v. Owen

some instances, obstructs the view of the track from the locomotive, thus making accidents more likely, it should not be construed so as to permit locomotives to run backward with the tender in front. Furthermore, when a locomotive is running backward at a high rate of speed drawing a passenger train, the lives of the passengers are in much greater danger than when the locomotive is running in the ordinary way. Locomotives are equipped with cowcatchers for the express purpose of catching or throwing off obstructions on the track, and thus prevent derailment of the trains. Tenders are not so equipped.

In view of the uniform construction which this court has heretofore given this statute, in consideration of the legislative intent as I conceive it, and looking to the public safety, which is of paramount importance, I most respectfully dissent from the majority opinion, and in this dissent I am joined by Chief Justice LANSDEN.